**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

SALVATORE FRISELLA,                 §
PAUL PATRICK DAY, and               §
HOWARD JEFFREY HUGHES               §
                                    §
    *Plaintiffs*                    §
                                    §
v.                                  §        CIVIL ACTION NO. _____
                                    §
DALLAS COLLEGE,                     §
                                    §
    *Defendant.*                    §

## PLAINTIFFS' ORIGINAL COMPLAINT

NOW COME Salvatore Frisella, Paul Patrick Day, and Howard Jeffrey Hughes, Plaintiffs in the above-styled and numbered cause, and file this Original Complaint against Defendant Dallas College. Plaintiffs would respectfully show the Court the following:

## I. THE PARTIES

1.1    Plaintiff Salvatore "Sal" Frisella is an individual residing in Denton County, Texas.

1.2    Plaintiff Paul Patrick Day is an individual residing in Rockwall County, Texas.

1.3    Plaintiff Howard "Jeff" Hughes is an individual residing in Dallas County, Texas.

1.4    Defendant Dallas College is a college or college district organized under the laws of the State of Texas for the purpose of operating a community college at several campuses in and around Dallas County, Texas. Also, Defendant is a "state actor" within the meaning of applicable law and the actions complained of herein comprise "state action." The address of Defendant's administrative office is 1601 Botham Jean Blvd., Dallas, Dallas County, Texas 75215. Defendant may be served with process by serving its Chancellor, Dr. Justin Lonon, at the foregoing address.

## II.  JURISDICTION AND VENUE

2.1     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1377; the provisions of 42 U.S.C. §§ 1983 and 1988; and the 1st and the 14th Amendments to the United States Constitution.

2.2     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all or part of Plaintiffs' claims accrued in Dallas County, Texas, which is within this district and division.

## III.  FACTUAL BACKGROUND

**A.     The Property Interests**

3.1     This case is brought by three professors employed by Dallas College. Each Plaintiff was employed for many years under written contracts and consistent with Dallas College's former version of policy DCA(LOCAL).  Plaintiffs (and others) were still employed under the former version of DCA(LOCAL) at the time the Dallas College Board of Trustees (the "Board") revised DCA(LOCAL) to eliminate the long-standing practice, as implemented by the Defendant's actual practices and policies over several years, in which proven faculty were afforded a new three-year contract each year (hereafter referred to as the "rolling 3-year contract"). Under Texas Law, the policies and practices of the College automatically became part of a full-time faculty member's contract because both parties were expected to comply with those policies.

3.2     The Defendant College District unlawfully attempted to diminish or eliminate long-standing policies and practices by having its Board purport to revise at least five written policies, including DMAB(LOCAL) on or about February 2022, DMAA(LOCAL) on or about August 2023, and DCA(LOCAL), DLA(LOCAL), and DD(LOCAL) on or about July 2023.

3.3    For many years, the annually, automatically renewable rolling 3-year contract was a form of tenure at Dallas College. Each Plaintiff has a property interest in continuing employment for at least the following reasons:

1    Each Plaintiff was, and is, in a rolling 3-year contract, renewable automatically each year. Each Plaintiff had, and has, a property interest in such rolling 3-year contract. Defendant has purportedly terminated that 3-year contract, or materially diminished it, without offering any due process to the Plaintiffs.

2    The Defendant's long-standing policy and practice had become part of the Plaintiffs' contracts because both parties were expected to comply with such policies. Each Plaintiff thus had a property interest in the overall contract, including both the written document and the policies.

3    During the terms of their contracts, each Plaintiff had the right to continue in his academic position unless dismissed by th District for good cause. On September 1, 2023, the Texas Legislature's new tenure scheme went into effect, including the following definition of tenure:

> "Tenure" means the entitlement of a faculty member of an institution of higher education to continue in the faculty member's academic position unless dismissed by the institution for good cause in accordance with the policies and procedures adopted by the institution under Subsection (c-1).

Tex. Educ. Code § 51.942(a)(4).

This statutory definition of tenure is in harmony with the Defendant's historic policy and practice, and upon its effective date, recognizes each Plaintiff's right of tenure; that is, Plaintiffs cannot be dismissed without a showing of good cause, after procedural due process has been afforded. None of the three Plaintiffs have been

dismissed by the institution with good cause, but their right to continue in their tenured positions has been denied by Defendant.

4.    Defendant's tenure policies were still in place, and Plaintiffs were (and are) still under three-year contracts signed under the previous policies, when Defendant's Board attempted to change Plaintiffs' rights under such contracts without any due process or hearing. Plaintiffs are still within their three-year contractual rights, and by virtue of the new statue, the new definition still provides for no dismissal or "nonrenewal" without due process, just as Defendant's policies provided for many years. The new definition is superimposed on Plaintiffs' existing contracts, and Defendant cannot purport to "nonrenew" without due process.

5.    Because the Defendant never lawfully terminated, with due process, the Plaintiffs' existing tenure status, Defendant is now bound by the legislative definition of tenure and must accord full due process before "dismissing" any of the Plaintiffs or claiming to "nonrenew" any of the Plaintiffs. If it be determined that Defendant has deprived Plaintiffs of their property interests without due process, then Plaintiffs seek all relief available as set forth below.

3.4    From the early 1970s until 2022, full-time faculty at Dallas College[1] had a form of tenure under which three-year employment contracts were not only renewed, but replaced each year with a new three-year contract, and faculty under such contracts were only subject to termination for good cause, and with appropriate due process. That is, the policy as it existed matches the definition of tenure now codified under Texas law.

---

[1] Prior to 2020, Dallas College was known as Dallas County Community College District, or DCCCD for short. This Complaint refers to the former DCCCD as Dallas College throughout.

3.5     In 2022, Professor Frisella had been under consecutive rolling three-year contracts since the fall semester of 2006 ("Fall 2006")[2]; Professor Day had been under consecutive rolling three-year contracts since Fall 2019; and Professor Hughes had been under consecutive rolling three-year contracts since Fall 2007. The policy, practice, and custom of Dallas College throughout those years conferred on Plaintiffs a property interest in their ongoing employment, with automatic renewal (subject to "effective" performance ratings) each year, along with their salary and benefits.

3.6     Defendant has deprived Plaintiffs of their property interests in their tenured employment without due process, in violation of the Fourteenth Amendment.

**B.     The Three Plaintiffs**

<u>Professor Sal Frisella</u>

3.7     Professor Frisella began as an adjunct professor at Defendant's Northlake campus in 1994, and at the Eastfield campus in 2002. He was a full-time "Visiting Scholar" from Fall 2002 to Spring 2004, becoming a permanent full-time instructor in Fall 2004. Since 2006, he has served under rolling three-year contracts, and is currently in his last semester of his last three-year contract, which began Fall 2021 and runs through Spring 2024. He has been offered only a one-year non-rolling contract for academic year 2024-2025. Dallas College refused to grant him a three-year contract. Professor Frisella has consistently met or exceeded expectations on his annual performance reviews.

3.8     When Professor Frisella was teaching full-time at Eastfield in 2006, Texas Woman's University offered him a full-time teaching position on a one-year contract. Because of the rolling three-year contracts at Dallas College (then DCCCD), he turned it down. In 2003, Professor Frisella's dean, Mark Presley, told him that the rolling three-year contract was the

---

[2] When capitalized herein, "Fall" or "Spring" shall refer to the fall academic semester or spring academic semester, of a given year.

college's version of tenure. This was reiterated in 2005 by Eastfield Vice President Allatia Harris, who also told Professor Frisella that the rolling three-year contract was the college's version of tenure.

Professor Paul Patrick Day

3.9     Professor Day began as an adjunct professor with Dallas College in 2015, and was hired full-time in 2016. In total, he has taught for thirteen years as a college professor, plus five years as a graduate teaching assistant. He has taught in person at Eastfield and online for multiple campuses, and is now assigned to the Cedar Valley campus. He received his first three-year rolling contract in 2019 from Dallas College and received replacement three-year rolling contracts annually thereafter until 2022. He is currently in the last semester of the three-year rolling contract he was issued in Spring 2021. He has been issued a new non-rolling three-year contract to begin Fall 2024 and runs through Spring 2027. Professor Day has consistently received "exceeds expectations" on his annual performance reviews.

3.10     Professor Day withdrew his application from Collin College in 2016, after being told he was a top candidate for a full-time geology position there, because of an offer from Dallas College. Specifically, Professor Day received an offer to teach full-time at Eastfield in the summer of 2016, at which time Dean Gretchen Reihl told him that Dallas College's rolling three-year contracts functioned like tenure, something Collin College could not offer. Later, when Professor Day signed his first rolling three-year contract in 2019, Dean Jess Kelley told him that these contracts were "our version of tenure."

Professor Jeff Hughes

3.11     Professor Hughes began as an adjunct in 1993, then served on a one-year probationary contract, teaching full-time, in 2006. His first rolling three-year contract began Fall

2007. He has served under rolling three-year contracts thereafter and is currently in the third year of the rolling three-year contract he was issued in 2021. He has been issued a two-year non-rolling contract for Fall 2024 through Spring 2026. As a professor for the past thirty years, Professor Hughes has always met or exceeded expectations on his performance reviews.

3.12    In 1993, two "Charter" senior professors[3] told Professor Hughes that the rolling three-year contract was the equivalent of tenure. These were Ted Sherill, a biology professor at Eastfield, and Gayle Weaver, a professor of biology and anatomy and physiology at Eastfield. Professor Hughes decided to work full-time at Eastfield, as opposed to seeking employment elsewhere, because he was attracted to the job security offered by the rolling three-year contract.

## C.    Actions by Dallas College to Deprive Plaintiffs of their Property Interests

3.13    In May 2021, the Dallas College faculty, including Plaintiffs, were last issued rolling 3-year contracts, which began Fall 2021 and run through Spring 2024. Under the then-existing policies and long-standing practices of Dallas College, new three-year contracts would have been issued in May 2022, replacing the 2021-2024 contracts with 2022-2025 contracts. The district's policies were part of each Plaintiff's contract. In Spring 2022, under the policies then in effect, each Plaintiff should have received, but did not receive, a Fall 2022 to Spring 2025 contract.

3.14    On January 11, 2022, the Board voted to remove rolling three-year contracts and to instead pursue new contract, evaluation, and grievance systems for faculty that would eliminate the protections and property interest of the prior rolling three-year contract policy and related policies.

---

[3] The designation "Charter" was previously a form of recognition given to founding professors at Eastfield College, now the Eastfield campus, of Dallas College.

3.15    Two specific policies which were changed were DMAB(LOCAL) and DCA(LOCAL).[4] On February 28, 2022, the first policy enacting such change was implemented, DMAB(LOCAL). A true and correct copy of the new policy is attached hereto as Exhibit A and incorporated herein by this reference. Notably, DMAB(LOCAL), until February 28, 2022, included the following language:

> A faculty member whose current employment with the College District has continued uninterrupted for the previous six years or more at the time he or she receives notice of intention to recommend nonrenewal shall be afforded the procedural rights in DMAA(LOCAL) even though he or she may be on a one-year contract at the time of such notice.[5]

A true and correct copy of the former DMAB(LOCAL) policy in effect until February 2022 is attached hereto as Exhibit B and incorporated herein for all purposes.

3.16    As of May 2022, no new contracts were issued to Plaintiffs or any other faculty then under 2021-2024 contracts. DCA(LOCAL), however, at that time, still provided as follows:

> One-year faculty contracts shall normally be recommended for consideration at a May Board meeting.

> Full-time faculty members may be employed for contractual periods of up to three years if the following conditions exist:

> 1. A faculty member has received a one-year contract for each of the first three years of faculty employment in the College District.

> 2. Upon completion of three consecutive years of faculty employment with the College District, a faculty member has rendered high-quality services to the College District as determined by the most recent rating obtained through the performance evaluation system established by the Chancellor.

---

[4] In totality, changes to multiple LOCAL policies secured the removal of the rolling three-year contract: DD, DLA, DCA, DMAA, and DMAB.

[5] DMAA(LOCAL) provides for due process of law in termination of faculty members mid-contract. A true and correct copy of such policy before the elimitation of tenure is attached hereto as Exhibit C and incorporated herein by this reference. The reference to "nonrenewal of faculty members on three year contracts" was removed from the policy in 2023.

> At any time after the completion of the first year of a three-year contract, if a faculty member has an "effective" performance rating, he or she may be offered a successor three-year contract at the discretion of the Board.

A true and correct copy of the former DCA(LOCAL) as it existed in 2022 is attached hereto as Exhibit D and incorporated herein by this reference.

3.17    On February 9, 2023, the second policy change to remove the rolling three-year contracts and faculty's longstanding tenure was adopted, and on July 5, 2023, the current version of DCA(LOCAL) was issued. A true and correct copy of such policy is attached hereto as Exhibit E and incorporated herein by this reference. Under the new DCA(LOCAL),

> Full-time faculty contracts shall be issued in accordance with applicable laws and College District policies and administrative procedures, as promulgated by the Chancellor.

> A faculty member who has rendered high-quality services to the College District, as determined in accordance with the College District's evaluation policy, and any procedures promulgated thereunder may be offered a multi-year contract, for a term of up to three years, in accordance with College District procedures. Nothing contained herein shall prohibit a recommendation of a contract term of less than three years for any such faculty member.

3.18    In addition to eviscerating the rolling three-year contract, the new DCA(LOCAL) reached back in time to take away rights from faculty who had signed their contracts under the previous policy:

> All active full-time faculty contracts issued prior to the term contract revisions effective January 11, 2022, will be permitted to run through their current term, subject to the terms and conditions provided therein. Any subsequent renewal of a full-time faculty contract issued before January 11, 2022, shall be in accordance with terms provided herein. For full-time faculty contracts issued after January 11, 2022, the contract term shall be prescribed in accordance with this policy and related administrative procedures.

See Exhibit E.

3.19    In May 2023, again, no new contracts were issued to Plaintiffs, or to any other faculty then under 2021-2024 contracts. In Fall 2023, the last fall semester of the 2021-2024

contracts, Dallas College issued new contracts to take effect Fall 2024 after the existing contracts expired in May 2024. Under the new policies, Professor Frisella received a one-year non-rolling contract, Professor Hughes received a two-year non-rolling contract, and Professor Day received a three-year non-rolling contract. Many, if not most, faculty across Dallas College received one-year or two-year contracts.

## IV.  <u>CAUSES OF ACTION</u>

4.1     *Alternative Pleadings*.  To the extent necessary, each of the claims set forth below is pleaded in the alternative. Further, to the extent necessary, all allegations set forth above in the Factual Background section of this Complaint are hereby referenced and fully incorporated in each of the claims below by this specific reference, as though set forth in full.

*42 U.S.C. § 1983: Deprivation of Procedural Due Process and Acacamic Freedom in Violation of the Fourteenth and First Amendment*

4.2     The violations of federal statutes and the United States Constitution complained of herein were done by state actors—Dallas College, its Board, and its administration. All actions and decisions complained of herein were made by policymakers of the institution, acting under color of law.

4.3     The Board of Trustees of Dallas College (the "<u>Board</u>") is the final policymaker relating to faculty employment and tenure. *See* Tex. Educ. Code § 130.082. The Board adopts policies, enacts regulations, and establishes general rules necessary for the operation of its campuses. *Id.* at § 130.040.

4.4     The moving force behind the violation of Plaintiff's constitutional rights is the Board, and the policies which have been enacted and applied to Plaintiffs based on the Board's decisions. Accordingly, pursuant to 42 U.S.C. § 1983, Plaintiffs seek redress for the following

violations of their rights, privileges, or immunities secured by the Constitution and laws of the United States.

**Count 1:        Violation of the 14th Amendment Brought Pursuant to 42 U.S.C. § 1983 – Deprivation of Property Interest without Procedural Due Process**

4.5    The 14th Amendment prohibits Dallas College from depriving Plaintiffs of their property interest in their tenured employment, or any other rights, privileges, and/or immunities secured under the U.S. Constitution without due process, and 42 U.S.C. § 1983 provides a mechanism for them to seek remedies for such deprivation. Dallas College's wrongful conduct, as described herein, was a result of the Board, the final policymaker for Dallas College, setting out to eliminate tenure, to cripple academic freedom, and to silence and eliminate outspoken faculty.

4.6    In January 2022, the Board voted, and thereafter implemented and/or enacted, revisions to policies that removed protections afforded to faculty. One of those policies, DMAB(LOCAL), had granted due process under existing policy DMAA(LOCAL) to faculty who had served continuously with the College District for six or more years, even if that service had been via one-year contracts.

4.7    The adoption of the Board's revisions to DMAA(LOCAL), DCA(LOCAL), DLA(LOCAL), and DD(LOCAL) did not occur until 2023. Nevertheless, Defendent deprived Plaintiffs (and others) of new 2022-2025 three-year contracts during Spring semester 2022, when they were entitled to such contracts based on policies and practices still in place. Plaintiffs (and others) were also owed, based on policies and practices still in place, new 2023-2026 contracts during Spring 2023, which did not occur.

4.8    As set forth in more detail above, in Section III which is specifically incorporated herein, Plaintiffs were never given notice, a meaningful opportunity to be heard, or any other form

of due process in their deprivation of those contracts or any subsequent contracts—prior to or after their rolling three-year contracts ceased—thus depriving them of their cognizable property interest in ongoing employment, salary, and benefits without due process. Dallas College's conduct violated Plaintiffs' procedural due process rights which are protected and guaranteed by the United States Constitution. Plaintiffs are entitled to their damages, including actual damages, damages for mental anguish, and/or nominal damages for the deprivation of due process, in addition to attorney fees.

**Count 2:**     **Violation of First Amendment Brought Pursuant to 42 U.S.C. § 1983 – Denial of Liberty Interest in Academic Freedom, Freedom of Assembly, and Right to Petition a Governing Board for a Redress of Grievances.**

4.9     Academic freedom is a particular species of free speech, and is protected by the First Amendment to the United States Constitution. The Supreme Court of the United States has stated that academic freedom is a "special concern" of the First Amendment.  Dallas College, in its policies, recognizes the right of its faculty to academic freedom.

4.10     It has long been recognized that tenure functions to protect academic freedom by insulating faculty from fear of reprisal, including dismissal, if they speak out or express unpopular opinions. Here, Dallas College took action to punish a faculty base which had conducted a vote of no confidence in the Chancellor. Additionally, on information and belief, Dallas College took action to punish their faculty base due to some faculty (including one or more of Plaintiffs) engaging in vocal and collaborative efforts to establish a faculty senate as an internal academic shared governance body of the college, as well as on account of some faculty (including one or more of Plaintiffs) establishing and holding membership in an external, private professional organization, a local chapter of the AAUP, that sent formal letters to the Dallas College Board of

Trustees critical of policies and actions by the Board and administration under the new "One College" policy.

4.11    The policies removing the three-year rolling contract were enacted to deprive faculty of tenure in order to create a chilling effect against any faculty who would otherwise express contrary opinions, and a mechanism for the administration to rid itself of faculty seeking to organize to oppose actions by the Board and the Chancellor. Although the Board stripped faculty of their rights to three-year rolling contracts, the Chancellor, former Chancellor, and at least some administrators have been granted multi-year contracts, which have been renewed each year. Notably, the new Texas statute on tenure prohibits a college from awarding tenure to an administrator that varies from the institution's general policy on the award of tenure. *See* Tex . Educ. Code § 51.942(f).

4.12    Defendant has intentionally acted to withdraw the protection of the tenure system from its faculty, leaving Plaintiffs subject to the whims of administration, and to punitive withholding of multi-year contracts. This has been an intentional plan to chill academic freedom and punish Plaintiffs and others for exercising their First Amendment rights to freedom of assembly and right to petition. In addition to purporting to eliminate the three-year-rolling contract tenure system, Defendant has revised its faculty evaluation process to provide a "holistic" (utterly non-transparent) system, under which faculty at the seven campuses are ultimately evaluated by a centralized group of administrators, rather than peers or even administrators with actual supervision of the faculty in question.

4.13    Plaintiffs were never afforded due process or presented with good cause to which they could effectively respond. They were essentially part of a collective punishment enacted by the Board, to chill academic freedom and other First Amendment rights, and all of the conduct set

forth above has deprived them of their liberty interests guaranteed by the First Amendment without the procedural due process protections of the Fourteenth Amendment. They have suffered actual damages, including mental anguish, and at least nominal damages for their deprivation of due process, for which they here sue.

***Pendent State Law Claims***

**Count 3:       Breach of Contract**

4.14    As set forth above, the policies of Dallas College were a part of each Plaintiff's employment contract, entered into in 2021. As set forth above, each Plaintiff entered into a 3-year rolling contract in 2021, for Fall 2021-Spring 2024.

4.15    In Spring 2022, Dallas College breached its own policies by its failure to issue new 3-year rolling contracts to existing, qualified faculty, including each of Plaintiffs. Prior to the 2023 implementation of the new DCA(LOCAL) policy, each Plaintiff was entitled, under the existing policies of Dallas College, to the 3-year rolling contract form of tenure under which they executed their 2021-2024 contracts, and all prior contracts. This breach of contract has caused damage to Plaintiffs, for which they here sue.

4.16    Additionally or alternatively, Dallas College has breached the specific contracts between each Plaintiff  and Dallas College by failing to replace such contracts in 2022 without the required demonstration of good cause, and procedural due process, as set forth in the policies which were in place at all relevant times. If Dallas College was not going to issue a new 3-year rolling contract to each Plaintiff (and its other faculty), the policies in place until February 2023 required due cause and procedural due process, which were not afforded Plaintiffs. This breach of contract has caused damage to Plaintiffs, for which they here sue.

*Violation of the Texas Open Meetings Act*

**Count 4:      Violation of the Texas Open Meetings Act, and Request for Injunctive and/or Mandamus Relief**

4.17     Chapter 551 of the Texas Government Code (the "Open Meetings Act") provides that meetings of governmental bodies must be open to the public (except for expressly authorized executive sessions). The Open Meetings Act applies to Dallas College's Board. As interested persons, Plaintiffs have standing to bring an action by mandamus or injunction to reverse a violation of the Open Meetings Act, pursuant to § 551.142(a)-(b).

4.18     On information and belief, the decisions and votes taken by the Board at the January 2022 meeting, and at subsequent meetings when the specific policy changes described herein were adopted, were the result of violations of the Texas Open Meetings Act.

4.19     In 2021, members of Dallas College's administration, including its Chancellor, met with Board members individually or in groups in a furtive manner to circumvent § 551.002's prohibition on a quorum of the Board meeting in private to deliberate over public business. While the Open Meetings Act lists certain exceptions to the general requirement of open meetings, § 551.143 provides that a member or group of members of a governmental body commits an offense if the member or group of members knowingly conspires to circumvent the Open Meetings Act by meeting in numbers less than a quorum for the purpose of secret deliberations in violation of the Open Meetings Act.

4.20     The actions of the Board complained of herein were all taken as the result of secret deliberations, prohibited by the Open Meetings Act. Accordingly, the Plaintiffs seek injunctive relief prohibiting Dallas College from enforcing the changes to policies DCA(LOCAL),

DMAB(LOCAL), DMAA(LOCAL), DLA(LOCAL), and DD(LOCAL), and restoring the former versions of each such policy.

## V.  REQUESTED RELIEF

5.1     Plaintiffs have been damaged as a direct and proximate result of Dallas College's actions, as alleged herein. Accordingly, Plaintiffs seek to recover all of their actual damages, including mental anguish damages. Additionally, because Plaintiffs were deprived of their procedural due process rights, Plaintiffs are entitled to at least $1.00 in nominal damages in any event and all attorney's fees. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) (holding that the denial of procedural due process should be actionable for nominal damages without proof of actual injury). Further, Plaintiffs seek all other equitable and injunctive relief which may be available to them, including, if applicable, injunctive relief and/or equitable relief requiring Defendant to provide them with full due process hearings, reinstatement of their tenure or restoration to them of their rolling 3-year contracts, and the protections previously afforded them thereunder.

5.2     Further, pursuant to Texas Government Code § 551.142(a)-(b), Plaintiffs seek injunctive relief from the policies enacted to eliminate the 3-year rolling contracts at Dallas College, based on the violations by some or all of the Board of the Open Meetings Act; specifically, they seek relief in the form of an injunction against the enforcement by Dallas College of the versions of DMAB(LOCAL), DMAA(LOCAL), DLA(LOCAL), and DD(LOCAL), enacted in 2022 and thereafter, and enjoining Dallas College from failing to restore the former versions of each such policy.

## VI.  FEES, COSTS, AND INTEREST

6.1     Plaintiffs have retained the law firm of Hill Gilstrap, P.C. to represent them in connection with this matter, and have agreed to pay the law firm any and all reasonable and

necessary attorney's fees and costs in connection with such representation. Without waiving and/or limiting any other relief requested in this Complaint, Plaintiffs seeks to recover, to the extent permitted by applicable law, including but not limited to 42 U.S.C. §§ 1988, Chapter 37 of the Texas Civil Practices and Remedies Code, and the Uniform Declaratory Relief Act, all of Plaintiffs' reasonable and necessary attorney's fees and costs to be incurred herein, in such amount as is equitable and just from the Defendant.

6.2    Plaintiffs are also entitled to and seek to recover costs of court, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.  <u>CONDITIONS PRECEDENT</u>

7.1    All conditions precedent to the Plaintiffs' recovery on the claims alleged herein have been performed or have occurred.

## VIII.  <u>DEMAND FOR JURY TRIAL</u>

8.1    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a jury trial and have tendered, or will tender, the requisite fee.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that upon final hearing, Plaintiffs recover judgment against Defendant and be awarded:

(a)    any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically), including both actual and nominal damages;

(b)    their litigation expenses and costs, including but not limited to their attorneys' fees and costs and any applicable expert fees;

(c)    costs of court, pre-judgment and post-judgment interest, at the maximum rate as allowed by law; and

(d)     such other and further relief, both general and special, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

*/s/ Frank Hill*
Frank Hill – SBN 09632000
fhill@hillgilstrap.com
Stefanie Klein – SBN 11565650
sklein@hillgilstrap.com

HILL GILSTRAP, P.C.
1400 W. Abram St.
Arlington, Texas 76013
(817) 261-2222
(817) 861-4685 FAX

**ATTORNEYS FOR PLAINTIFFS**

# Exhibit A

Dallas College
057501

TERM CONTRACTS
NONRENEWAL

DMAB
(LOCAL)

**Faculty Members on Full-Time Faculty Contracts**

The employment of a faculty member serving on a full-time faculty contract may be concluded at the end of the contract term. If it is the intent of the College District not to recommend renewal of a faculty member's contract for the ensuing academic year, the faculty member shall be notified, in writing, in accordance with applicable laws and College District policies and procedures. If the term of the contract is one year, such notice will be provided in the current contract year; if the contract term is longer than one year, notice may be provided in or before the final year of the contract term.

**Grievance Rights**

The Board designates the director of human resources as the person to whom faculty members may present a grievance on an issue related to their nonrenewal.

A faculty member may, within ten days after receipt of such notice, submit to the chief human resources officer a written request to present a grievance on the matter of intention to recommend nonrenewal.

If a grievance request is not received, the nonrenewal shall become effective as described in the notice.

Once a request to present a grievance has been filed, the conference shall normally be scheduled within seven working days.

# Exhibit B

Case 3:24-cv-00469-D     Document 1     Filed 02/27/24     Page 22 of 35     PageID 22

TERM CONTRACTS                                                    DMAB
NONRENEWAL                                                       (LOCAL)

**Faculty Members on One-Year Contract**

The employment of a faculty member serving on a one-year contract may be concluded at the end of the contract term. If it is the intent of the College District not to recommend renewal of a faculty member's contract for the ensuing academic year, the faculty member shall be notified, in writing, usually by the Vice President of Instruction, on or before the last day in March of the current contract year.

A faculty member whose current employment with the College District has continued uninterrupted for the previous six years or more at the time he or she receives notice of intention to recommend nonrenewal shall be afforded the procedural rights in DMAA(LOCAL) even though he or she may be on a one-year contract at the time of such notice.

**Faculty Members on Three-Year Contract**

If it is the intention of a supervisor to recommend against re-employment of a faculty member who is on a three-year contract, the supervisor shall normally confer with the college president, and, if the college president concurs in the intention not to re-employ the faculty member, the supervisor must inform the faculty member by memorandum on or before the first day of March of the final year of the three-year contract. This memorandum shall contain a full statement of the reasons why renewal of the contract will not be recommended.

**Request for Hearing**

A faculty member may, within ten days after receipt of such memorandum, submit to the college president a written request for a hearing on the matter of intention to recommend nonrenewal.

The hearing shall be held according to procedures in DMAA(LOCAL).

If a hearing is not requested, the nonrenewal shall become effective as described in the notice.

**Grievance Filed Under Education Code 51.960**

The Board designates the director of human resources as the person to whom a faculty member may present a grievance on an issue related to his or her nonrenewal.

If a faculty member wishes to present a grievance under Education Code 51.960, it is recommended that he or she file a request to present the grievance within ten working days after final action on the nonrenewal proceeding.

Once a request to present a grievance has been filed, the conference shall normally be scheduled within seven working days.

# Exhibit C

Dallas College

03.331

TERM CONTRACTS                                                    DMAA
TERMINATION MID-CONTRACT                                         (LOCAL)

| | |
|---|---|
| **Suspension with Pay** | A term contract employee may be suspended with pay and placed on administrative leave by the Chancellor or designee during an investigation of alleged misconduct by the employee or at any time the Chancellor or designee determines that the College District's best interest will be served by the suspension. |
| **Suspension Without Pay** | A term contract employee may, for good cause, be suspended without pay for a definite period of time set by the Board, provided that the employee has been given written notice of the allegations constituting good cause for the suspension and, before the suspension is imposed, has been afforded an opportunity for a hearing that complies with the time lines and procedural requirements set out above. |
| **Involuntary— Faculty** | Termination procedures for faculty members shall ensure due process of law. Excellence in instruction and quality education generally require that faculty members be periodically evaluated to determine whether or not their employment with the College District shall continue. Faculty personnel may be terminated only in accordance with the principles set forth in the following procedures: |
| | If a faculty member serving on a one-year contract is terminated for either academic or disciplinary reasons prior to the expiration of the contract term, he or she shall be afforded the notice and hearing rights described below. These rights would apply to anyone on a contract. |
| **Due Process Procedures** | Due process procedures for faculty members for terminations during a contract term, for suspension without pay, or for nonrenewal of faculty members on three-year contracts are as follows: |
| Written Request for Hearing | 1.  Upon written notification, the employee may, within ten days, submit to the college president or Chancellor, as appropriate, a written request for a hearing. A hearing officer shall be selected as described below. |
| Hearing Panel Selection | 2.  Each academic year, the Chancellor shall, with the advice and consultation of the faculty council, select a panel of not less than five potential hearing officers. Members of this panel shall be persons who are qualified in their understanding of hearing procedures and who are not College District employees. The hearing officers so selected shall have the power to administer an oath, and the testimony from all witnesses shall be under oath. Additionally, the Chancellor shall, with the advice and consultation of the faculty council, name no less than three alternate members of this panel. The names of the panel members and of the alternates shall be provided to the college presidents and to the members of the faculty council no later than February 15 of each academic year. |

DATE ISSUED: 4/26/2017                                           1 of 4
UPDATE 32
DMAA(LOCAL)-X

TERM CONTRACTS                                                    DMAA
TERMINATION MID-CONTRACT                                       (LOCAL)

3. When a hearing is requested, the faculty member shall be provided with a list of the hearing officer panel members and hearing officer alternate panel members.

Within five days after the day when the list of potential hearing officers has been delivered to the faculty member, the faculty member and the college president shall meet in the presence of a notary public and shall select the hearing officer in the following manner: The faculty member shall first strike off a name from the list; then the college president shall strike off a name, and so on, in this fashion until only one name remains.

The notary public shall provide this information to the Chancellor, who shall notify the hearing officer whose name was not stricken. In the event such hearing officer is unable to serve within the prescribed time period, the potential hearing officer whose name was stricken last shall be requested to serve.

Hearing

4. The hearing shall be held at a place and time named by the hearing officer, in consultation with the college president, and the faculty member; provided however, that the hearing shall not be held on the campus of any of the colleges of the College District, or in the College District offices. The hearing shall be convened within a reasonable time after the selection of the hearing officer.

Expenses of the hearing shall be borne by the College District, with the exception of any fees charged to the faculty member by legal counsel.

The hearing shall be closed unless the faculty member requests that it be open. If the faculty member wishes the hearing to be open to the public, he or she shall make this wish known by delivering such a request, in writing, to the hearing officer, not less than 72 hours prior to the scheduled time for the hearing to begin. Upon receiving this request, the hearing officer shall promptly notify the college president, in writing, that the hearing shall be open to the public. The hearing shall be conducted by the hearing officer in the manner that he or she deems most appropriate, within the guidelines specified herein including the provisions that:

a. The faculty member and the college president shall have the right to be represented by counsel if they choose.

b. The faculty member shall have the right to face and to question those persons on whose judgments and opinions the recommendation against reemployment is based.

TERM CONTRACTS                                                      DMAA
TERMINATION MID-CONTRACT                                         (LOCAL)

|  |  |  |
|---|---|---|
|  | c. | The faculty member and the college president shall have the right to present facts and to bring forward witnesses. |
|  | d. | Witnesses shall be placed under oath by the hearing officer. |
|  | e. | The burden of proof shall be upon the college president to show facts, by a preponderance of the evidence, that support the termination or nonrenewal. |
| Records and Findings | 5. | The proceedings of the hearing shall be tape recorded, and the recordings shall be held by the hearing officer for his or her own examination. A copy of the tapes shall be provided to the faculty member and to the college president upon request. The hearing officer shall base his or her findings solely upon the record of the hearing. Following the conclusion of the hearing, the hearing officer shall, within seven days, deliver a finding of fact in writing to the college president, to the faculty member, and to the Chancellor. In addition to the findings of fact, the hearing officer shall include a conclusion based on the facts that the reasons supporting the contemplated termination or nonrenewal have or have not been sustained. |
| Chancellor Consideration | 6. | The Chancellor shall consider the written report of the hearing officer in determining his or her recommendation to the Board concerning the reemployment or nonreemployment of the faculty member. Within ten days after delivery of the report of the hearing officer to him or her, the Chancellor shall deliver to the faculty member a copy of his or her judgment in writing. |
| Board Review | 7. | The Board may accept the recommendation of the Chancellor after examination of the hearing officer's report and the judgment of the Chancellor. If the Board determines to review the appeal further, the proceeding is appellate in nature (not de novo) and is limited to the evidence presented at the hearing provided in item 5, above. |
| Publicity Concerning Termination Procedures | 8. | In all proceedings, confidentiality of testimony shall be preserved in keeping with applicable state law. In the event a public statement from a College District spokesman is deemed appropriate, such statement shall be issued by the college president or the Chancellor. |
| **Suspension** |  | When the welfare of the institution or its students is deemed to be endangered by the presence of a faculty member, the Chancellor or college president may suspend such employee pending further study to determine appropriate action. The faculty member shall be notified of the suspension and the cause or reason for such suspension. The faculty member, upon receipt of said notice, shall |

Dallas College

TERM CONTRACTS                                                  DMAA
TERMINATION MID-CONTRACT                                        (LOCAL)

have the right to request a hearing, which shall follow the proce-
dure prescribed at DUE PROCESS PROCEDURES, above.

# Exhibit D

EMPLOYMENT PRACTICES                                                    DCA
TERM CONTRACTS                                                      (LOCAL)

**General Provisions**    All term contracts shall be in writing on a form approved by the Board, setting forth the length of the contract and other terms and conditions of employment. In most circumstances, contracts shall not be for specific assignments but shall indicate employment as "faculty" or "administrator." No term contract shall be valid or binding on the Board until approved by Board action. Contracts shall be signed by the employee and the Board's designee.

The Chancellor, upon recommendation of the appropriate staff, shall recommend contracts for approval.

In exceptional circumstances, the Chancellor may authorize the employment of personnel when, in the opinion of the Chancellor, the deferral of employment authorization until the next regular Board meeting would cause a disruption in the operation of the College District. The terms of employment of such personnel must conform to policies in this manual concerning compensation, workload, benefits, and the like. Personnel so authorized shall be submitted to the Board for ratification at the earliest practical time.

Unless expressly authorized elsewhere in this manual, no employee has the authority to offer or promise to offer a contract of employment to any person without authorization from the Board. Nor shall any person expect to receive a contract of employment until the Board authorizes the contract and the appropriate personnel execute such contract. Neither renewal of employment contracts nor other employment procedures or practices shall give rise to an expectation of continued employment beyond the term of the contract or a belief in de facto tenure.

**Administrative Personnel**    Administrative contracts shall normally be issued for the fiscal year. Contracts may be issued for periods of less than 12 months, based upon length of service required.

An administrator who, in the opinion of the Chancellor, has significant administrative duties such that it would be in the best interest of the College District to enter into a contract of employment for a term longer than one year may be eligible to receive a contract for a term not to exceed three years upon recommendation from the Chancellor, provided that nothing contained herein shall prohibit a recommendation of a contract term of less than three years for any such administrator. Persons eligible for such a contract shall be direct reports to the Chancellor.

Before completion of the first year of a contract, for any administrator with a contract term longer than one year, the Chancellor shall evaluate the administrator to determine whether to recommend another contract of the same term or a contract of another term, up to

EMPLOYMENT PRACTICES                                          DCA
TERM CONTRACTS                                            (LOCAL)

and including a three-year contract. At any time after the completion of the first year of a three-year contract, an administrator with a three-year contract term, having been evaluated by the Chancellor and upon recommendation of the Chancellor, may be offered a successor three-year contract at the discretion of the Board.

**Faculty**

One-year faculty contracts shall normally be recommended for consideration at a May Board meeting.

Full-time faculty members may be employed for contractual periods of up to three years if the following conditions exist:

1. A faculty member has received a one-year contract for each of the first three years of faculty employment in the College District.

2. Upon completion of three consecutive years of faculty employment with the College District, a faculty member has rendered high-quality services to the College District as determined by the most recent rating obtained through the performance evaluation system established by the Chancellor.

At any time after the completion of the first year of a three-year contract, if a faculty member has an "effective" performance rating, he or she may be offered a successor three-year contract at the discretion of the Board.

Faculty members serving a three-year contract may request, in writing, a reduced load during the term of their contract. When a faculty member makes such a request and is granted a reduced load, no additional multi-year contract will be offered. Upon approval of a request for a reduced load, the faculty member shall be placed in "wind-down" contractual status, with a proportionate reduction in compensation, and shall continue to serve at such reduced contract level for the remainder of the term of his or her employment contract. For purposes of this provision, "wind-down contractual status" refers to effective nonrenewal of a multi-year contract.

Once approved, a reduced contract request may not be withdrawn by the faculty member. Accordingly, the contractual workload may not thereafter be increased, except as necessary to meet extenuating circumstances for the benefit of the College District or as required by law. Any increase in contractual workload after a reduction shall be approved in writing by the Chancellor. The Chancellor shall promulgate procedures for the submission and evaluation of requests for reduced load.

EMPLOYMENT PRACTICES                                                    DCA
TERM CONTRACTS                                                      (LOCAL)

Requests for modifications or reductions to faculty load that may otherwise be authorized by law or College District policy shall be considered and/or provided in accordance with same.

Part-Time Faculty     Part-time faculty members shall be employed under a contract for part-time credit teaching that shall include a special employment agreement and an addendum listing part-time faculty responsibilities.

# Exhibit E

Dallas College
057501

EMPLOYMENT PRACTICES                                                          DCA
TERM CONTRACTS                                                            (LOCAL)

**General Provisions**       All term contracts shall be in writing on a form approved by the
                             Chancellor, setting forth the length of the contract and other terms
                             and conditions of employment. In most circumstances, contracts
                             shall not be for specific assignments but shall indicate employment
                             as "faculty" or "administrator." No term contract shall be valid or
                             binding on the Board until approved by the Chancellor. Contracts
                             shall be signed by the employee and the Chancellor's designee.

                             Unless expressly authorized elsewhere in this manual, no em-
                             ployee has the authority to offer or promise to offer a contract of
                             employment to any person without authorization from the Chancel-
                             lor. Nor shall any person expect to receive a contract of employ-
                             ment until the Chancellor authorizes the contract and the appropri-
                             ate personnel execute such contract. Neither renewal of
                             employment contracts nor other employment procedures or prac-
                             tices shall give rise to an expectation of continued employment be-
                             yond the term of the contract or a belief in de facto tenure.

**Administrative**           Administrative contracts shall be issued in accordance with appli-
**Personnel**                cable laws and College District policies and administrative proce-
                             dures, as promulgated by the Chancellor.

                             An administrator who, in the opinion of the Chancellor, has signifi-
                             cant administrative duties such that it would be in the best interest
                             of the College District to enter into a contract of employment for a
                             term longer than one year, and who has rendered high-quality ser-
                             vices to the College District as determined in accordance with the
                             College District's evaluation policy, and any procedures promul-
                             gated thereunder, may be offered a multi-year contract, for a term
                             of up to three years, in accordance with College District proce-
                             dures. Persons eligible for such a contract shall be members of the
                             Chancellor's leadership team. [See BG(REGULATION)]

Renewal                      Unless an employee on an administrator contract is otherwise noti-
                             fied by the Chancellor or a designee in accordance with applicable
                             laws and College District policies and procedures, and before the
                             expiration of the contract term, the employee will be employed by
                             the College District for a successive term of up to one year, subject
                             to a written, approved, and executed contract being timely filed
                             with Human Resources. The position and terms of employment for
                             the successor term will be determined by the College District in its
                             sole discretion and included in the written contract. In no event will
                             any contractual employee have any property right to or expectation
                             of continued employment with the College District beyond the term
                             of the contractual employee's contract or any successor contract.

                             Nothing contained herein shall prohibit a recommendation of a con-
                             tract term of less than one year for any administrator if it is deter-
                             mined, at the sole discretion of the Chancellor or a designee, that

EMPLOYMENT PRACTICES                                                      DCA
TERM CONTRACTS                                                        (LOCAL)

such recommendation is determined to be in the best interest of the College District.

All active administrator contracts issued prior to the term contract revisions effective January 11, 2022, will be permitted to run through their current term, subject to the terms and conditions provided therein. Any subsequent renewal of an administrator contract issued before January 11, 2022, shall be in accordance with the terms provided herein. For administrator contracts issued after January 11, 2022, the contract term shall be prescribed in accordance with this policy and related administrative procedures.

**Faculty**

Part-Time Faculty

Part-time faculty members shall be employed under a contract for part-time credit teaching that shall include a special employment agreement and an addendum listing part-time faculty responsibilities.

Full-Time Faculty

Full-time faculty contracts shall be issued in accordance with applicable laws and College District policies and administrative procedures, as promulgated by the Chancellor.

A faculty member who has rendered high-quality services to the College District, as determined in accordance with the College District's evaluation policy, and any procedures promulgated thereunder may be offered a multi-year contract, for a term of up to three years, in accordance with College District procedures. Nothing contained herein shall prohibit a recommendation of a contract term of less than three years for any such faculty member.

Renewal

Unless a full-time faculty member who is on a faculty contract is otherwise notified by the Chancellor or a designee in accordance with applicable laws and College District policies and procedures, and before the expiration of the contract term, the faculty member will be employed by the College District for a successive one-year term, subject to a written, approved, and executed contract being timely filed with Human Resources. The position and terms of employment for the successor one-year term will be determined by the College District in its sole discretion and included in the written contract. In no event will any contractual employee have any property right to or expectation of continued employment with the College District beyond the term of the contractual employee's contract or any successor contract.

All active full-time faculty contracts issued prior to the term contract revisions effective January 11, 2022, will be permitted to run through their current term, subject to the terms and conditions provided therein. Any subsequent renewal of a full-time faculty contract issued before January 11, 2022, shall be in accordance with terms provided herein. For full-time faculty contracts issued after

Dallas College
057501

EMPLOYMENT PRACTICES                                               DCA
TERM CONTRACTS                                                  (LOCAL)

|  |  |
|---|---|
|  | January 11, 2022, the contract term shall be prescribed in accordance with this policy and related administrative procedures. |
| **Voluntary Reduction of Load** | Full-time faculty members may request, in writing, a reduced load during the term of their contract. When a faculty member makes such a request and is granted a reduced load, the faculty member shall have a proportionate reduction in compensation and shall continue to serve at such reduced contract level for the remainder of the term of the faculty member's contract. |
|  | Once approved, a request for a reduction of load may not be withdrawn by the faculty member. Accordingly, the contractual workload may not thereafter be increased, except as necessary to meet extenuating circumstances for the benefit of the College District or as required by law. Any increase in contractual workload after a reduction shall be approved in writing by the Chancellor or a designee. The Chancellor shall promulgate procedures for the submission and evaluation of requests for reduced load. |
|  | Requests for modifications or reductions to faculty load that may otherwise be authorized by law or College District policy shall be considered and/or provided in accordance with same. |
|  | Nothing contained herein shall prohibit the College District from effecting a reduction of load or issuing a notice of nonrenewal for a multi-year contract issued to a faculty member if it is determined, at the sole discretion of the Chancellor or a designee, to be in the best interest of the College District. |