IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SALVATORE FRISELLA, <br> PAUL PATRICK DAY, and <br> HOWARD JEFFREY HUGHES, <br><br> Plaintiffs, <br><br> VS. <br><br> DALLAS COLLEGE, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 3:24-CV-0469-D |

MEMORANDUM OPINION
AND ORDER

This is an action by three Dallas College professors—plaintiffs Salvatore Frisella ("Professor Frisella"), Paul Patrick Day ("Professor Day"), and Howard Jeffrey Hughes ("Professor Hughes") (collectively, "the Professors," unless the context indicates otherwise)—alleging federal-law claims against defendant Dallas College under 42 U.S.C. § 1983 for deprivation of their property and First Amendment liberty without due process of law, in violation of the First and Fourteenth Amendments, and supplemental state-law claims. Dallas College moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons explained, the court dismisses *sua sponte* the Professors' federal-law claims under Rule 12(b)(1) for lack of subject matter jurisdiction, declines to exercise supplemental jurisdiction over the Professors' pendent state-law claims, and grants the Professors leave to replead.

I

This lawsuit arises in connection with the Professors' employment relationship with Dallas College.[1] From 1970 until 2022, Dallas College entered into "rolling three-year contracts" with full-time faculty members. Under a policy called "DCA(Local)," Dallas College, at its board of directors' discretion, renewed and replaced with new, "successor" three-year contracts the contracts of full-time faculty members who had obtained an "effective" performance rating through the performance evaluation system established by the Chancellor. A policy called "DMAB(Local)" provided further that faculty members on three-year contracts for whom renewal was not recommended were entitled to certain procedural protections. In particular, the policy entitled these faculty members to notice in the form of a memorandum containing the reasons for non-renewal and to a hearing on the matter, which was to be held in accordance with the procedures enumerated in a policy called "DMAA(Local)."

The Professors were employed by Dallas College under rolling three-year contracts until the fall semester of 2022. In 2022 Dallas College did not renew and replace the Professors' contracts because, in January of that year, it revised its policies to eliminate the rolling three-year contract scheme. The revised version of DCA(Local) provided that, unless

---

[1] The court recounts the background facts favorably to the Professors as the complaining parties. At the Rule 12(b)(6) dismissal stage, for purposes of ruling on standing, the trial court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

notified otherwise by the Chancellor, full-time faculty members' contracts would automatically renew for successive one-year terms. And the revised version of DMAB(Local) provided that faculty members for whom renewal was not recommended were entitled to written notice and a grievance conference with the chief human resources officer. The revised policies omitted the provision in the prior version of DCA(Local) that faculty members' contracts would be renewed if they obtained an "effective" performance rating. And the revised policies lacked a substitute provision that prescribed the reasons for which faculty could be terminated. Having eliminated the three-year rolling contracts scheme, and without affording the Professors the notice and opportunity to be heard that were guaranteed by its prior policies, Dallas College in 2022 opted not to renew and replace the Professors' 2021-2024 contracts with 2022-2025 contracts.

According to the Professors' complaint, Dallas College revised its policies in retaliation against outspoken faculty. Faculty conducted a vote of no confidence in the Chancellor. Professor Day and other faculty engaged in vocal and collaborative efforts to establish a faculty senate as an internal academic shared governance body of the college. And Professors Day and Frisella, together with other faculty, established and held membership in a Dallas College chapter of the American Association of University Professors ("AAUP"), which sent formal letters to Dallas College criticizing its policies and actions. The Professors allege that Dallas College responded by revising its policies in a manner calculated to chill academic freedom and punish outspoken faculty.

Importantly for purposes of determining the existence of Article III standing, although

in 2022 Dallas College did not renew and replace the Professors' contracts with new three-year contracts, the Professors were not terminated. The Professors retained their employment with Dallas College under their 2021-2024 contracts, and, in 2023, Dallas College issued new contracts to the Professors to take effect in 2024. Professor Frisella received a one-year non-rolling contract, Professor Hughes a two-year non-rolling contract, and Professor Day a three-year non-rolling contract. Under the revised version of DCA(Local), the Professors' 2021-2024 contracts were "permitted to run through their current term, subject to the terms and conditions provided therein," Compl. Ex. E at 1, whereas their new contracts' terms were prescribed in accordance with the revised policies.

The Professors assert that, in revising its policies to eliminate the rolling three-year contracts scheme, Dallas College deprived them of property without due process of law, in violation of the Fourteenth Amendment; suppressed their academic freedom and other First Amendment rights, in violation of the First and Fourteenth Amendments; breached its contracts with them; and violated the Texas Open Meetings Act. Dallas College moves to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted. The court is deciding the motion on the briefs, without oral argument.

II

The does not reach Dallas College's Rule 12(b)(6) motion to dismiss for failure to state a claim court. Instead, it raises *sua sponte* that it lacks subject matter jurisdiction over the Professors' federal-law claims because they do not plausibly allege that they have Article III constitutional standing.

Although neither side challenges the court's subject matter jurisdiction, "the court must notice its own lack of subject matter jurisdiction *sua sponte*, if necessary." *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 618 (N.D. Tex. 2007) (Fitzwater, J.); *see also Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) (explaining that, where necessary, the court must raise the absence of Article III constitutional standing *sua sponte*). The court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction[.]" Rule 12(h)(3).

Article III of the United States Constitution confines the jurisdiction of a federal court to an actual cases and controversies. U.S. Const. art. III, § 2. The standing doctrine implements this constitutional limitation by requiring that a plaintiff establish "a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citation and internal quotation marks omitted). To establish constitutional standing, a plaintiff must demonstrate that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

III

The determination of whether the Professors have constitutional standing begins and ends with the injury-in-fact requirement. To constitute an injury in fact, the harm to the plaintiff must be sufficiently "concrete." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424

(2021).

> [C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III. Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion.

*Id.* at 425 (citations omitted).

As the parties seeking to invoke this court's jurisdiction, the Professors bear the burden of establishing standing according to the degree of evidence required at the pleading stage of litigation. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). "On a motion to dismiss, [the court] presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotation marks, citation, and alteration omitted). Additionally, "standing is not dispensed in gross. Instead, [the Professors] must demonstrate standing for each claim [they] seek to press and for each form of relief that is sought." *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (cleaned up).

The Professors allege four possible injuries: deprivation of their property interest in their continued employment, breach of their employment contracts, chilling of their protected

speech, and mental anguish.

IV

The court first considers whether the Professors' alleged deprivation of their property interest in continued employment pleads a concrete Article III injury in fact.

A

A deprivation of property is a violation of personal rights that may constitute an Article III injury in fact. *See TransUnion*, 594 U.S. at 427 (explaining that hypothetical lawsuit alleging that factory's pollution damaged plaintiff's property "may of course proceed in federal court because the plaintiff has suffered concrete harm to her property"); *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 800 (5th Cir. 2012) ("Injuries to rights recognized at common law—property, contracts, and torts—have always been sufficient for standing purposes."). This includes a deprivation of one's property right in continued employment. *See, e.g.*, *Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997) (acknowledging that "public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process"); *Bolton v. City of Dallas, Tex.*, 472 F.3d 261, 263 (5th Cir. 2006) ("[P]ublic employees can be endowed with constitutionally-protected property interests in their employment[.]"). "Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

B

The court will assume *arguendo* that the Professors have plausibly alleged that they have a property interest in their continued employment. Even assuming that they do, they have not plausibly pleaded that they have suffered a concrete Article III injury in fact, because they have not pleaded sufficient facts for the court to draw the reasonable inference that they have suffered a concrete deprivation of their property.

For purposes of the injury-in-fact requirement, it is not enough that the Professors had a property interest in their continued employment; they must have suffered some injury to that property interest. *See TransUnion*, 594 U.S. at 427 (explaining that hypothetical lawsuit alleging that factory's pollution damaged plaintiff's property "may of course proceed in federal court because the plaintiff has suffered concrete harm to her property"); *Servicios Azucareros de Venezuela, C.A.*, 702 F.3d at 800 (emphasis added) ("*Injuries* to rights recognized at common law—property, contracts, and torts—have always been sufficient for standing purposes."). This requirement is most commonly met by the termination of a tenured educator's employment, which is an injury to his property interest in continued employment. *See, e.g.*, *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1227 (5th Cir. 1985) (enumerating the "due process protections to which a tenured professor is entitled before he may be dismissed"); *Collins v. Wolfson*, 498 F.2d 1100, 1104 (5th Cir. 1974) ("We accordingly fail to discern from the complaint that these instructors have suffered any injury in fact, since they continue in their respective posts[.]"). But the Professors have *not* been terminated; although Dallas College opted not to renew their contracts in 2022, all three

professors were issued new contracts in 2023. The Professors contend that they were deprived of their property interest in their continued employment when Dallas College changed its policies in 2022 to eliminate their tenure, which is essentially an allegation that Dallas College deprived the Professors of their tenured status. This injury is not sufficiently concrete to constitute an Article III injury in fact.

Under Article III, the Professors must show that they "suffered an injury in fact that is concrete, particularized, and actual or imminent[.]" *TransUnion*, 594 U.S. at 423. "[F]ederal courts do not adjudicate hypothetical or abstract disputes." *Id.* The Professors "must have a personal stake in the case[.]" *Id.* (citation and internal quotation marks omitted). They "must be able to sufficiently answer the question: 'What's it to you?'" *Id.* (citation omitted). To determine whether an alleged injury is concrete,

> courts [] assess whether the alleged injury to the plaintiff has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts. That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury. [This] does not require an exact duplicate in American history and tradition. But [it] is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts.

*Id.* at 424-25 (citations omitted).

The Professors' alleged deprivation of their tenured status is not a concrete injury in fact. Although a deprivation of property is a concrete injury, *see TransUnion*, 594 U.S. at 427; *Servicios Azucareros*, 702 F.3d at 800, the Professors' tenured status does not fall within the scope of their (assumed) property interest in their continued employment. The

scope of the Professors' property interest is determined by reference to state law. *Roth*, 408 U.S. at 577. The court has located no Texas authority that defines a tenured professor's property interest as encompassing anything more than his right not to be terminated without good cause. *See, e.g.*, *Levitt*, 759 F.2d at 1227; *Collins*, 498 F.2d at 1104. And the Professors do not allege that they have been terminated.[2]

Because the Professors have not plausibly pleaded that they were deprived of property in any concrete sense, their alleged deprivation of property is not an Article III injury in fact.[3]

---

[2]Because the court is raising *sua sponte* the Professors' failure to plausibly plead that they have Article III standing, it is relying for its characterization of the Professors' alleged property-based injury on its reading of the Professors' pleadings, "accept[ing] all well-pleaded facts as true, [and] viewing them in the light most favorable to the [Professors]." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). The court acknowledges that, on repleading, the Professors' characterization of their alleged property-based injury may differ from the court's present understanding. Accordingly, the court does not suggest that deprivation of an educator's tenured status can never constitute a concrete Article III injury in fact.

[3]For the same reason, the Professors' Fourteenth Amendment procedural due process claim is not ripe for adjudication. A matter must be ripe for a federal court to exercise jurisdiction under Article III of the United States Constitution. *See United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *Id.* "To establish the jurisdictional prerequisite of ripeness, [a plaintiff must] show (1) a concrete injury for the purposes of damages, or (2) an imminent threat of harm providing a right to injunctive relief." *Zepeda v. Boerne Indep. Sch. Dist.*, 294 Fed. Appx. 834, 837 (5th Cir. 2008). "The doctrines of ripeness and standing often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury. If the purported injury is contingent [on] future events that may not occur as anticipated, or indeed may not occur at all, the claim is not ripe for adjudication." *Id.* at 838 (footnote, citations, and internal quotation marks omitted); *see also Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 581 (1985). The Professors' purported injury—the

V

The court considers next whether the Professors have pleaded an Article III injury in fact based on Dallas College's alleged breach of the Professors' 2021-2024 employment contracts.

A

In support of their contention that they were injured when Dallas College breached their employment contracts, the Professors allege that Dallas College's policies were part of their 2021-2024 contracts. Under one such policy—DMAB(Local)—the Professors were entitled to due process upon "nonrenewal." In 2022, Dallas College did not renew and replace the Professors' 2021-2024 contracts with 2022-2025 contracts, which constituted "nonrenewal." And by not affording the Professors the due process protections that were guaranteed by DMAB(Local), Dallas College breached the Professors' 2021-2024 contracts.

B

Although a breach of contract can be "a sufficient injury for standing purposes[,]" *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022), "the relevant question is whether [the plaintiff's] alleged injury is concrete, particularized, and actual or

---

deprivation of their property interest in continued employment—is contingent on their nonrenewal or some other harm, which may not occur at all. Nor have the Professors alleged a concrete injury for purposes of damages. Therefore, the Professors' Fourteenth Amendment procedural due process claim does not yet appear to be ripe for adjudication. *See Hurd v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 2012 WL 13076603, at *6-7 (W.D. Tex. Aug. 17, 2012) (concluding that plaintiff who was denied full salary and clinical privileges suffered concrete injury and thus had established the jurisdictional prerequisite of ripeness), *rec. adopted*, 2012 WL 13076712 (W.D. Tex. Sept. 26, 2012).

imminent[,]" *Pierre v. Vasquez*, 2022 WL 68970, at *3 (5th Cir. Jan. 6, 2022) (unpublished opinion) (citation and internal quotation marks omitted). The Professors allege that Dallas College's breach of their employment contracts "caused damage to Plaintiffs, for which they here sue." Am. Compl. ¶¶ 4.18-4.19. From this bare and conclusory allegation, the court cannot reasonably infer that Dallas College's alleged breach of contract caused the Professors to suffer a concrete harm. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that at the pleading stage "[t]hreadbare recitals[,] . . . supported by mere conclusory statements, do not suffice"); *see also, e.g.*, *Denning*, 50 F.4th at 451 (concluding that plaintiff adequately pleaded Article III standing where she alleged that because of the defendant's breach of contract, her insurer had been billed "at a daily rate of $120 for services that she alleges neither she nor her physician had authorized"); *Ryan v. Brookdale Int'l Sys., Inc.*, 230 Fed. Appx. 366, 368 (5th Cir. 2007) (per curiam) (explaining that breach-of-contract plaintiff's "best argument for an injury in fact is that he received no benefit of the bargain from his smoke hoods and that he lost money in purchasing them"); *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923 F.Supp.2d 961, 968 (S.D. Tex. 2013) ("PEP's argument that the threshold for constitutional standing is met by the assignors' involvement in this matter lacks merit because PEP has neither alleged nor argued that the assigned claims for . . . breach of contract asserted in this action seek redress for injuries that the assignors suffered as a result of their involvement in this matter . . . . Nor has PEP cited any authority in support of its argument that the assignors' mere involvement in this action constitutes an injury-in-fact sufficient to establish standing to assert assigned claims for . . . breach of

contract."), *aff'd sub nom. Pemex Exploracion Y Produccion v. Conocophillips Co.*, 595 Fed. Appx. 445 (5th Cir. 2015) (per curiam).

Accordingly, because the Professors have not plausibly alleged a concrete harm, their alleged breach of contract cannot constitute an Article III injury in fact.

VI

The court now considers whether the Professors' alleged speech harm pleads a concrete Article III injury in fact.

A

Construed liberally, the Professors' speech-harm allegations support two possible alternate theories: Dallas College credibly threatened to enforce its revised policies against the Professors, thereby chilling their protected speech; or Dallas College's revision of its policies and/or its nonrenewal of the Professors' contracts in 2022 was an adverse action in retaliation against the Professors' protected speech. Either way, for their alleged speech harm to constitute an injury in fact, the Professors must plausibly allege that Dallas College chilled their protected speech.

B

"[G]overnment action that chills protected speech without prohibiting it can give rise to a constitutionally cognizable injury." *Glass v. Paxton*, 900 F.3d 233, 238 (5th Cir. 2018) (quoting *Zimmerman v. City of Austin*, 881 F.3d 378, 391 (5th Cir. 2018)). A plaintiff who bases Article III standing on the chilling effect of a government policy "has suffered an injury in fact if he (1) has an 'intention to engage in a course of conduct arguably affected

with a constitutional interest,' (2) his intended future conduct is 'arguably . . . proscribed by [the policy in question],' and (3) 'the threat of future enforcement of the [challenged policies] is substantial.'" *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (alterations in original) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-64 (2014)), *as revised* (Oct. 30, 2020).

C

In support of their contention that they suffered speech-related harms, the Professors allege the following. Professor Day engaged "in vocal and collaborative efforts to establish a faculty senate as an internal academic shared governance body of the college." Am. Compl. ¶ 4.10. And Professors Day and Frisella established and maintained "membership in the [AAUP]," the local chapter of which was "critical of policies and actions by [Dallas College]." *Id*. In response, Dallas College enacted the "policies removing the three-year rolling contract . . . in order to create a chilling effect against any faculty who would otherwise express contrary opinions, and [to enable the] administration to rid itself of faculty seeking to organize to oppose actions by the Board and the Chancellor." *Id.* ¶ 4.13.

The Professors have not plausibly alleged that their speech was chilled. The Professors' allegations focus on their contention that Dallas College revised its policies with the intention of chilling faculty from engaging in protected speech. But the Professors do not allege that they intend to engage in a course of conduct arguably affected with a constitutional interest; they have only alleged that two of them, Professors Day and Frisella, had engaged in protected speech in the past. The Professors do not allege that the revised

policies arguably proscribe their protected speech; they have only asserted that Dallas College revised the policies to chill their protected speech. And the Professors do not allege a substantial future threat of enforcement by Dallas College; although the Professors allege that Dallas College revised its policies to enable it to terminate outspoken faculty, they do not plead that Dallas College has exhibited any intention of doing so. Indeed, the Professors concede that, after revising its policies, Dallas College renewed the contracts of all three professors. Without plausible allegations that Dallas College has chilled the Professors' speech, their alleged speech harm cannot independently constitute an Article III injury in fact. *Compare Speech First*, 979 F.3d at 331-36 (concluding that First Amendment plaintiff plausibly alleged chilling of speech as Article III injury in fact where complaint alleged that plaintiff wished to engage in protected speech in the future, that the defendant's policies were sufficiently broad to proscribe that speech, and that the defendant had repeatedly enforced its policies in the manner that plaintiff feared) *with Collins*, 498 F.2d at 1104 ("Importantly, the instructors make no allegation that any disciplinary action or sanction has been taken, or that any is even presently threatened against them[] . . . . Moreover, there is no averment that the presence of these documents has in any manner checked their exercise of First Amendment rights. We accordingly fail to discern from the complaint that these instructors have suffered any injury in fact, since they continue in their respective posts and do not allege to have been chilled one iota in exercising First Amendment rights."). The court therefore concludes that the Professors have not pleaded a concrete Article III injury in fact based on the alleged chilling of their speech.

VII

Finally, the court considers whether the Professors' alleged mental anguish pleads a concrete Article III injury in fact.

A

Post-*TransUnion*, emotional harm may suffice for standing, potentially by analogy to the tort of intentional infliction of emotion distress. *See TransUnion*, 594 U.S. at 436 n.7 ("We take no position on whether or how such an emotional or psychological harm could suffice for Article III purposes—for example, by analogy to the tort of intentional infliction of emotional distress."). The proper inquiry is whether the Professors' alleged mental anguish

> has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts. That inquiry asks whether [the Professors] have identified a close historical or common-law analogue for their asserted injury. [This] does not require an exact duplicate in American history and tradition. But [it] is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts.

*Id.* at 424-25 (citations omitted).

B

In support of their contention that they have suffered mental anguish, the Professors allege that they are entitled to "mental anguish" damages. This bare and conclusory allegation is plainly insufficient. *See Iqbal*, 556 U.S. at 678 (explaining that at the pleading stage "[t]hreadbare recitals . . . do not suffice"); *see also Hotze v. Burwell*, 784 F.3d 984,

- 16 -

992-93 (5th Cir. 2015) (concluding that allegations more detailed than the Professors' did not plausibly allege emotional harm); *Van Deelen v. Jones*, 2024 WL 3852349, at *9 (S.D. Tex. Aug. 16, 2024) (same). The court therefore concludes that the Professors have failed to plead a concrete Article III injury in fact based on alleged mental anguish.

## VIII

The court now considers whether it should exercise supplemental jurisdiction over the Professors' pendent state-law claims given that it has dismissed for lack of subject matter jurisdiction their federal-law claims.

In addition to their federal-law claims, the Professors assert state-law claims against Dallas College. Although this court can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), in this circuit "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial[.]" *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). Having dismissed the Professors' federal-law claims, the court in its discretion declines to exercise supplemental jurisdiction over their state-law claims. Accordingly, the court dismisses the Professors' state-law claims without prejudice.

## IX

Although the court is dismissing the Professors' claims, it will permit them to replead. *See, e.g.*, *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are

incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). Because there is no indication that the Professors cannot, or are unwilling to, cure the defects that the court has identified, the court grants them 28 days from the date this memorandum opinion and order is filed to file an amended complaint. Additionally, this procedure will ensure that the court's dismissal *sua sponte* of the Professors' federal-law claims is fair.

\* \* \*

For the reasons explained, the court dismisses the Professors' claims without prejudice and also grants the Professors leave to file a second amended complaint within 28 days of the date this memorandum opinion and order is filed. If the Professors choose not to replead, the court will enter judgment dismissing their federal-law claims without prejudice for lack of subject matter jurisdiction and dismissing their pendent state-law claims without prejudice in its discretion.

**SO ORDERED**.

October 8, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE