IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SALVATORE FRISELLA, | § | |
| PAUL PATRICK DAY, and | § | |
| HOWARD JEFFREY HUGHES, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-0469-D |
| | § | |
| DALLAS COLLEGE, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Three Dallas College Professors—plaintiffs Salvatore Frisella ("Professor Frisella"),

Paul Patrick Day ("Professor Day"), and Howard Jeffrey Hughes ("Professor Hughes")

(collectively, "the Professors," unless the context indicates otherwise)—bring this 42 U.S.C.

§ 1983 action complaining that defendant Dallas College unlawfully revoked their tenure.

Dallas College moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of Article III

constitutional standing and under Rule 12(b)(6) for failure to state a claim on which relief

can be granted. The Professors oppose the motion. For the reasons that follow, the court

grants the motion as to the Professors' federal-law claims, declines to exercise supplemental

jurisdiction over their pendent state-law claims, and grants the Professors leave to replead.

I

The relevant background facts of this case are largely set out in a prior memorandum

opinion and order and need not be repeated at length for purposes of deciding Dallas

College's motion to dismiss. *See Frisella v. Dall. Coll. (Frisella I)*, 2024 WL 4448675, at *1-2 (N.D. Tex. Oct. 8, 2024) (Fitzwater, J.). In *Frisella I* the court dismissed *sua sponte* the Professors' federal-law claims under Rule 12(b)(1) for lack of Article III constitutional standing, declined to exercise supplemental jurisdiction over the Professors' pendent state-law claims, and granted the Professors leave to replead. Thereafter, the Professors filed a second amended complaint, which is their operative pleading.

Dallas College now moves to dismiss under Rule 12(b)(1) for lack of Article III constitutional standing and under Rule 12(b)(6) for failure to state a claim on which relief can be granted. The Professors oppose the motion. The court is deciding the motion on the briefs, without oral argument.

II

The court considers first whether the Professors have Article III constitutional standing.

Article III of the United States Constitution confines the jurisdiction of a federal court to an actual "case[]" or "controvers[y]." U.S. Const. art. III, § 2. The standing doctrine implements this constitutional limitation by requiring that plaintiffs establish "a personal stake in the outcome of the controversy as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citation and internal quotation marks omitted). To establish constitutional standing, the Professors must demonstrate that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3)

-2-

that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578

U.S. 330, 338 (2016).

Dallas College contends that the Professors have not suffered an injury in fact. To

constitute an injury in fact, the harm to the plaintiff must be sufficiently "concrete."

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021).

> [C]ertain harms readily qualify as concrete injuries under Article
> III. The most obvious are traditional tangible harms, such as
> physical harms and monetary harms. If a defendant has caused
> physical or monetary injury to the plaintiff, the plaintiff has
> suffered a concrete injury in fact under Article III. Various
> intangible harms can also be concrete. Chief among them are
> injuries with a close relationship to harms traditionally
> recognized as providing a basis for lawsuits in American courts.
> Those include, for example, reputational harms, disclosure of
> private information, and intrusion upon seclusion.

*Id.* at 425 (citations omitted).

As the parties seeking to invoke this court's jurisdiction, the Professors bear the

burden of establishing standing according to the degree of evidence required at the pleading

stage of litigation. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Procter &*

*Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001), *abrogated in part on other*

*grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014).

"On a motion to dismiss, [the court] presumes that general allegations embrace those specific

facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotation

marks, citation, and alteration omitted). Additionally, "standing is not dispensed in gross.

Instead, [the Professors] must demonstrate standing for each claim [that they] seek to press

and for each form of relief that is sought." *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (cleaned up).

In pertinent part, the Professors allege four possible injuries in fact. Professors Frisella and Day assert that they have suffered mental anguish, and Professor Hughes alleges that Dallas College deprived him of his property interest in his tenured status, changed the terms, conditions, or privileges of his employment, and breached his employment contract.

III

The court considers first whether the mental anguish alleged by Professors Frisella and Day pleads a concrete Article III injury in fact.

A

"'[E]motional distress' is a traditional harm that satisfies *TransUnion*'s concreteness requirement." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024). The parties disagree about whether the allegations supporting such harm are sufficiently detailed. Dallas College contends that the supporting allegations are too "vague" to "establish a concrete injury in fact." D. Br. (ECF No. 26) at 8. Professors Frisella and Day respond that, "[a]lthough general, [their] factual allegations of mental anguish are not conclusory, and suffice to establish injury in fact." Ps. Resp. (ECF No. 30) at 10.

B

The court concludes that Professors Frisella and Day have plausibly pleaded their emotional injury. In particular, the second amended complaint alleges:

> In order to avoid the hostility at Eastfield, given the lies and accusations against himself and his wife, Day moved his office to the Cedar Valley campus. Both his health, and Frisella's health, have suffered as a result of Dallas College's conduct, including the exacerbation of stress-related illnesses. The stress and pressure which Dallas College brought to bear against Plaintiffs Day and Frisella in retaliation for their protected speech . . , caused emotional distress and mental anguish, including physical manifestations thereof.

2d Am. Compl. ¶ 4.16. From these allegations, the court can reasonably infer that Professors Frisella and Day suffered emotional distress and therefore plausibly pleaded a concrete Article III injury in fact. *See Calogero*, 95 F.4th at 958 (concluding that plaintiffs' emotional distress was a concrete Article III injury in fact where they "complained of 'fear, anxiety, and emotional distress,'" and one plaintiff "was so 'terrified' . . . that she agreed to make monthly payments on a promissory note").

Accordingly, the court denies Dallas College's motion to dismiss the actions of Professors Frisella and Day under Rule 12(b)(1) for lack of Article III constitutional standing.[1]

_____

[1]Implicit in Dallas College's briefing of its jurisdictional defense is the contention that, if the mental anguish alleged by Professors Frisella and Day pleads an Article III injury in fact, that injury would only support standing to assert their "constitutional causes of action." D. Br. (ECF No. 26) at 8. If Dallas College intends to advance this argument, the court declines to accept it at the pleading stage. Although it is true that "[Professors Frisella and Day] must demonstrate standing for each claim [that they] seek to press and for each

IV

The court next considers whether Professor Hughes has plausibly pleaded a concrete Article III injury in fact based on his alleged injuries stemming from the deprivation of his property interest in his tenured status, the change in the terms, conditions, or privileges of his employment, and the breach of his employment contract.

A

The second amended complaint does not plead a concrete Article III injury in fact based on the alleged deprivation of Professor Hughes's property interest in his tenured status.

A deprivation of property is a violation of personal rights that may constitute an Article III injury in fact. *See TransUnion*, 594 U.S. at 427; *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 800 (5th Cir. 2012). Whether the alleged removal of Professor Hughes's tenured status deprived him of property is a question of Texas state law. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Under Texas state law, a tenured educator has a property interest in his continued employment that

---

form of relief that is sought," *Reule*, 114 F.4th at 367 (cleaned up), the question whether a single injury supports multiple claims is a question of traceability, *see, e.g.*, *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 367 (5th Cir. 2018), *as revised* (Feb. 1, 2018). A single injury can support standing to assert multiple claims if Professors Frisella and Day establish that the injury is fairly traceable to the challenged conduct of the defendant that underlies each claim. Professors Frisella and Day have satisfied this obligation. In particular, the court can reasonably infer from the second amended complaint that their alleged mental anguish is fairly traceable, not only to the conduct that underlies their constitutional claims, but to Dallas College's alleged revision of its policies in breach of the Professors' employment contracts, which underlies their breach of contract claim, and Dallas College's alleged revision of its policies without adequate notice to the public of its deliberations, which underlies their Texas Open Meetings Act claim.

-6-

encompasses the right not to be terminated without good cause. *See, e.g.*, *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1227 (5th Cir. 1985); *Collins v. Wolfson*, 498 F.2d 1100, 1104 (5th Cir. 1974).[2]

Acknowledging that he has not been terminated without good cause, Professor Hughes contends that he also had a property interest in his tenured status under *Curtis v. University of Houston*, 940 F. Supp. 1070 (S.D. Tex. 1996), and *Rathjen v Litchfield*, 878 F.2d 836 (5th Cir. 1989).[3]  He maintains that *Curtis* recognized "the status of tenure . . . as a property interest itself," Ps. Resp. (ECF No. 30) at 6, when the court observed that "although [the plaintiff] has a property interest in his *status* as a tenured associate professor, he has no property right to the promotion," *Curtis*, 940 F. Supp. at 1078 (emphasis added).  He further maintains that, in *Rathjen*, "the Fifth Circuit observed that under *Roth*, 'a tenured city employee' has 'a constitutionally protected property interest *in her position*.'"  Ps. Resp. (ECF No. 30) at 6.

---

[2]Professor Hughes contends that *Collins* is inapposite because the professors in that case "did not allege a deprivation of property interest, but instead complained that their employer deprived them of their liberty interest in their good name." 2d Am. Compl. ¶ 2.4 n.1.  But *Collins* is not inapposite on that basis; at a minimum, its statement that the professors had not "suffered an injury in fact, since they continue in their respective posts," *Collins*, 498 F.2d at 1104, is dicta.

[3]Professor Hughes also appears to rely on *Winkler v. DeKalb Cnty.*, 648 F.2d 411 (5th Cir. June 1981).  *Winkler* held that a county engineer with *de facto* tenure was deprived of property when he was "demoted to a position of vastly diminished responsibilities without cause." *Id.* at 414.  It is unclear from the briefing, however, what bearing, if any, *Winkler* has on the Professors' deprivation-of-property theory of Article III standing.  But the court need not speculate because it is granting the Professors leave to replead.

But neither *Curtis* nor *Rathjen* supports the proposition that Professor Hughes had a property interest in his tenured status as a matter of Texas state law.  Although both cases involved Texas plaintiffs, neither provides support from Texas authorities.  Instead, both cases cite *Roth*, which held that property interests are determined by reference to *state law*. *Roth*, 408 U.S. at 577.  *Roth* does not answer the question whether tenured educators have a property interest in their tenured status; it instructs courts to look to state law.  *Curtis* and *Rathjen* therefore do not support the conclusion that tenured educators have a property interest in their tenured status as a matter of Texas state law.

Accordingly, Professor Hughes has failed to allege an Article III injury in fact based on the deprivation of his property interest in his tenured status.

B

Nor has Professor Hughes pleaded a plausible Article III injury in fact based on alleged changes in the terms, conditions, or privileges of his employment.

Professor Hughes maintains that Dallas College's removal of his tenured status was a change in the terms, conditions, or privileges of his employment that constitutes an injury in fact under *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), and *Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023) (en banc).  *Muldrow* and *Hamilton* hold that plaintiffs suing under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, have statutory standing to sue for discrimination with respect to the terms, conditions, or privileges of employment.  Professor Hughes maintains that a such change "meets the test for Article III standing," 2d Am. Compl. ¶ 2.5, because, "[a]s explained in *TransUnion* and

*Spokeo*, the Title VII claims in *Hamilton* and *Muldrow* do not have a different test for Article III standing simply because of their statutory basis," *id.* ¶ 2.7.

The court disagrees.  Neither *Hamilton* nor *Muldrow* stands for the proposition that a change in the terms, conditions, or privileges of a person's employment is a concrete Article III injury in fact.  Statutory standing does not automatically confer constitutional standing.  *See Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."); *TransUnion*, 594 U.S. at 426 (same).  And to the extent those plaintiffs had constitutional standing, their Article III injury in fact was likely sex-based discrimination.  *See TransUnion*, 594 U.S. at 427 ("[Concrete] harms may also include harms specified by the Constitution itself."); *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822 (5th Cir. 2022) ("[I]ntangible harms can also be concrete.  Think of the kind of harms recognized in . . . the Constitution itself."); U.S. Const. amend. XIV ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.").

Instead, the proper inquiry is whether the alleged change in the terms, conditions, or privileges of Professor Hughes's employment are a "traditional tangible harm" or an intangible harm "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."  *See TransUnion*, 594 U.S. at 425.  Professor Hughes's loss of his assurance of long-term employment is not a traditional tangible harm, "such as physical harms and monetary harms."  *Id.*  Nor is it an intangible harm "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American

courts." *Id.* The court cannot locate, and Professor Hughes does not identify, any "close historical or common-law analogue for [such] asserted injury." *Id.* at 424.

Accordingly, the court holds that Professor Hughes has failed to plead an Article III injury in fact based on alleged changes in the terms, conditions, or privileges of his employment.

C

Last, the court considers whether Professor Hughes has pleaded an Article III injury in fact based on Dallas College's alleged breach of his employment contract.

Professor Hughes alleges that Dallas College's failure to renew his 2021-2024 employment contracts with 2022-2025 contracts was a breach of contract and therefore caused an injury in fact. Although a breach of contract can be "a sufficient injury for standing purposes," *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022), Professor Hughes has the burden to plausibly plead that the breach resulted in a concrete injury, *see Lujan*, 504 U.S. at 561; *Pierre v. Vasquez*, 2022 WL 68970, at *3 (5th Cir. Jan. 6, 2022). Professor Hughes alleges that Dallas College's "breach of contract has caused damage to [him], for which [he] here sue[s]. [He] lost [his] tenure rights[.]" 2d Am. Compl. ¶ 4.20. "From this bare and conclusory allegation, the court cannot reasonably infer that Dallas College's alleged breach of contract caused [Professor Hughes] to suffer a concrete harm." *Frisella I*, 2024 WL 4448675, at *5 (collecting supporting authority).

Accordingly, Professor Hughes has not pleaded an Article III injury in fact based on his breach of contract claim. Because Professor Hughes has not plausibly pleaded that he

suffered an injury in fact, the court grants Dallas College's motion to dismiss his action under Rule 12(b)(1) for lack of Article III constitutional standing.

V

Having concluded that Professors Frisella and Day have plausibly pleaded Article III constitutional standing, the court now evaluates whether they have stated a claim on which relief can be granted.

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiffs'] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

-11-

'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

VI

Professors Frisella and Day assert claims under 42 U.S.C. § 1983 for deprivation of their property and First Amendment liberty without due process of law, in violation of the First and Fourteenth Amendments.

A

Section 1983 provides a private right of action to redress a violation of a federal constitutional or statutory right by those acting under color of state law. *See Manuel v. City of Joliet*, 580 U.S. 357, 361 (2017). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted).

To state a claim under § 1983, a plaintiff must allege a violation of a federal constitutional or statutory right and demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See, e.g.*, *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). To assert a claim against a local government entity like a community college, a plaintiff must also allege that (1) an official policy or custom was a cause in fact of the deprivation of rights inflicted; (2) a final policymaker approved or sanctioned the official policy or custom; and (3) the official policy or custom is a "moving force" behind the deprivation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658,

690-91 (1978). These three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

The court can consider whether the plaintiffs have alleged a violation of a federal constitutional right before reaching the issue of municipal liability. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009) (addressing "threshold issue" of whether defendants violated plaintiff's constitutional rights before addressing the issue of municipal liability).

B

The court considers first whether Professors Frisella and Day have plausibly pleaded that Dallas College deprived them of their property interest in continued employment without due process of law, in violation of the Fourteenth Amendment.

"To state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest'" without due process of law. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) (per curiam)). The parties dispute whether Professors Frisella and Day had a property interest in continued employment.[4] The court need not reach this question. Even

_____

[4]The parties also appear to assume that, if Professors Frisella and Day were entitled to due process, that process would consist of the sort of notice and opportunity contemplated in the prior version of Dallas College's policies. The court need not reach this question to decide the instant motion to dismiss. But to the extent that Dallas College's revision of its

-13-

assuming *arguendo* that Professors Frisella and Day were tenured, and therefore had a property interest in their employment, they have not plausibly pleaded that Dallas College deprived them of that supposed property interest considering the fact that both retain their employment with Dallas College. "The court has located no Texas authority that defines a tenured professor's property interest as encompassing anything more than his right not to be terminated without good cause." *Frisella I*, 2024 WL 4448675, at *4.

Accordingly, the court grants Dallas College's motion to dismiss the Fourteenth Amendment due process claim of Professors Frisella and Day under Rule 12(b)(6).

---

policies was a "legislative action," Professors Frisella and Day may not have been entitled to any process at all. *See Jackson Ct. Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989) ("[I]t is well established law that once an action is characterized, as legislative, procedural due process requirements do not apply."); *Martin v. Mem'l Hosp. at Gulfport*, 130 F.3d 1143, 1149 (5th Cir. 1997) (same); *McMurtray v. Holladay*, 11 F.3d 499, 504 (5th Cir. 1993) ("[W]hen a legislature extinguishes a property interest via legislation that affects a general class of people, the legislative process provides all the process that is due."); *Buford v. Holladay*, 791 F. Supp. 635, 644 (S.D. Miss. 1992) (concluding that legislative enactment that "extinguished Plaintiffs' property interests in employment with the Department of Economic Development" did not deprive plaintiffs of property without due process, because the "legislative process . . . afforded Plaintiffs all the process they were due"), *aff'd sub nom. McMurtray*, 11 F.3d at 504. *But see Atkins v. Parker*, 472 U.S. 115, 130 (1985) (holding that food-stamp beneficiaries were not deprived of property without due process by legislative enactment lessening value of entitlement where there was "no claim that there was any defect in the legislative process"); *Couf v. DeBlaker*, 652 F.2d 585, 590 (5th Cir. Aug. 1981) (citation omitted) ("Our opinions repeatedly characterize local zoning decisions as 'legislative' in nature. If this word is used advisedly as it appears to be then the plaintiffs cannot complain of a denial of procedural due process, for no constitutional limitation on legislative procedure is relevant here."); *Laza v. City of Palestine, Tex.*, 2022 WL 946342, at *20 (E.D. Tex. Mar. 29, 2022) (denying summary judgment dismissing due process claim based on alleged Texas Open Meetings Act violation).

-14-

C

The court now considers the claim that Dallas College revised its policies in retaliation for the speech activities of Professors Frisella and Day, in violation of the First and Fourteenth Amendments.

1

The First Amendment has been held to apply to the states through the Fourteenth Amendment's Due Process Clause and protects "[s]peech by citizens on matters of public concern[.]" *Lane v. Franks*, 573 U.S. 228, 235 (2014). "[P]ublic employees do not renounce their citizenship when they accept employment," *id.* at 236, and they cannot be discharged, disciplined, or punished for exercising their right to free speech, *see Page v. DeLaune*, 837 F.2d 233, 237 (5th Cir. 1988). "To prove a claim of First Amendment retaliation, [] plaintiff[s] must establish that (1) [they] suffered an adverse employment decision; (2) [their] speech involved a matter of public concern; (3) [their] interest in commenting on matters of public concern . . . outweighs the [d]efendant's interest in promoting efficiency; and (4) [their] speech motivated the adverse employment decision." *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013) (fifth alteration in original) (internal quotation marks omitted) (quoting *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001)).

Dallas College maintains that Professors Frisella and Day have not satisfied the second prong.[5] Whether speech involves a matter of public concern is a question of law.

---

[5]Dallas College also challenges whether Professors Frisella and Day can satisfy the first prong—that they suffered an adverse employment decision. The court need not reach

*See, e.g., James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* at 146.

2

Dallas College contends that the First Amendment claims of Professors Frisella and Day "fail[] because . . . [they] did not speak as citizens on a matter of public concern." D. Br. (ECF No. 26) at 15. Professors Frisella and Day respond that they "spoke outside of their official duties as professors," and therefore as citizens. Ps. Resp. (ECF No. 30) at 17. They posit that, in discussing "the faculty's concern regarding the execution and implementation of the new 'One College' policy by the Board," which served to "warn taxpayers of the possibility that their tax dollars were being grossly misused," they spoke on a matter of public concern. *Id.* at 18. The court concludes that Professors Frisella and Day have not plausibly alleged that they spoke on a matter of public concern.[6]

---

this issue, however, because it concludes that Professors Frisella and Day have not plausibly alleged that they spoke on a matter of public concern.

[6]The court assumes *arguendo* that Professors Frisella and Day have plausibly alleged that they spoke as citizens.

Professors Frisella and Day allege that:

> Dallas College took action to punish their faculty base due to
> some faculty (including Plaintiff Paul Patrick Day) engaging in
> vocal and collaborative efforts to establish a faculty senate as an
> internal academic shared governance body of the college, as
> well as on account of some faculty (including Plaintiffs Paul
> Patrick Day and Plaintiff Salvator Frisella) establishing and
> holding membership in the American Association of University
> Professors ("AAUP"). The AAUP is an external, private,
> professional organization. Professor Day was among the nine
> founders of a Dallas College chapter of the AAUP, and served
> as its parliamentarian. Professor Frisella was an AAUP member.
> The local chapter of AAUP sent formal letters to the Dallas
> College Board of Trustees, critical of policies and actions by the
> Board and administration under the new "One College" policy.

2d Am. Compl. ¶ 4.10. Professors Frisella and Day maintain that this speech was on a matter

of public concern:

> The content of the speech weighs in favor of public concern
> because the AAUP letters discussed the faculty's concern
> regarding the execution and implementation of the new "One
> College" policy by the Board, serving to warn taxpayers of the
> possibility that their tax dollars were being grossly misused. . .
> . The Plaintiffs recognized the mismanagement—and sounded
> the alarm over wasted public funds. No reading of the
> Plaintiffs' allegations suggests that their purpose was to magnify
> a personal dispute between themselves and Dallas College. As
> such, the content of Plaintiffs' speech weighs in favor of public
> concern. . . .The form of the speech suggests it is of public
> concern because the letters were submitted "[to a] place where
> one might make a complaint of public concern." Sending letters
> to the Board is "a place where one might make a complaint of
> public concern," because the Board ultimately had the authority
> to address Plaintiffs' concerns. . . .Finally, the context of the
> letters indicates that Plaintiffs spoke on a matter of public
> concern. AAUP wrote to speak on behalf of faculty as a whole,
> not for specific professors. Here, Plaintiffs Day and Frisella
> participated in actions intended to improve Dallas College by

> creating a faculty senate, working to strengthen academic
> freedoms, and making the Board of Trustees aware of faculty
> concerns over spending decisions.

Ps. Resp. (ECF No. 30) at 18-19 (citations omitted) (cleaned up).

The court disagrees.  The facts alleged by Professors Frisella and Day do not allow the court to draw the reasonable inference that their alleged speech—considering its content, form, and context—was on a matter of public concern.  The court cannot assess, for example, whether the alleged speech "does not involve solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of a manager's status as an arm of government," or whether "releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance[.]"  *Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001).

Accordingly, the court grants Dallas College's Rule 12(b)(6) motion to dismiss the First Amendment retaliation claims of Professors Frisella and Day.

VII

The court now considers whether it should exercise supplemental jurisdiction over the pendent state-law claims of Professors Frisella and Day given that it is dismissing their federal-law claims.

In addition to their federal-law claims, Professors Frisella and Day assert state-law claims against Dallas College.  Although the court can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), in this circuit "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all

-18-

federal-law claims are eliminated before trial[.]" *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). Having dismissed the federal-law claims of Professors Frisella and Day, the court in its discretion declines to exercise supplemental jurisdiction over their state-law claims. Accordingly, the court dismisses the state-law claims of Professors Frisella and Day without prejudice.

## VIII

Although the court is dismissing the Professors' claims, it will permit them to replead. *See, e.g.*, *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). There is no indication that the Professors cannot, or are unwilling to, cure the defects that the court has identified. And allowing them to file a third amended complaint is not excessive under the circumstances of this case. The Professors filed their first amended complaint before the court addressed the adequacy of their original complaint. The court in *Frisella I* dismissed the first amended complaint on grounds that it raised *sua sponte*. Today's decision addressing the Professors' second amended complaint is the first that analyzes arguments that the parties, rather than the court alone, have raised. Accordingly, the court will grant the Professors 28 days from the date this memorandum opinion and order is filed to file a third amended complaint. *See, e.g.*, *Reneker v. Offill*, 2010 WL 1541350, at *2, *7 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) (concluding, after twice

granting motions to dismiss, that plaintiff's second amended complaint stated claim on which relief could be granted).

*   *   *

For the reasons explained, the court dismisses the Professors' claims without prejudice and grants them leave to file a third amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

March 10, 2025

_____
SIDNEY A. FITZWATER
SENIOR JUDGE