IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SALVATORE FRISELLA, <br> PAUL PATRICK DAY, and <br> HOWARD JEFFREY HUGHES, <br><br> Plaintiffs, <br><br> VS. <br><br> DALLAS COLLEGE, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § Civil Action No. 3:24-CV-0469-D <br> § <br> § <br> § <br> § |

MEMORANDUM OPINION
AND ORDER

Three Dallas College Professors—plaintiffs Salvatore Frisella ("Professor Frisella"), Paul Patrick Day ("Professor Day"), and Howard Jeffrey Hughes ("Professor Hughes") (collectively, "the Professors," unless the context indicates otherwise)—bring this 42 U.S.C. § 1983 action complaining that defendant Dallas College unlawfully revoked their tenure. Dallas College moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of Article III constitutional standing and under Rule 12(b)(6) for failure to state a claim on which relief can be granted. The Professors oppose the motion. For the reasons that follow, the court grants the motion as to the Professors' federal-law claims, declines to exercise supplemental jurisdiction over their pendent state-law claims, and grants the Professors what is likely their last opportunity to replead.

I

The relevant background facts of this case are largely set out in a prior memorandum opinion and order and need not be repeated at length for purposes of deciding Dallas College's motion to dismiss. *See Frisella v. Dall. Coll. ("Frisella I")*, 2024 WL 4448675, at *1-2 (N.D. Tex. Oct. 8, 2024) (Fitzwater, J.).

In *Frisella v. Dallas College ("Frisella II")*, 2025 WL 755224 (N.D. Tex. Mar. 10, 2025) (Fitzwater, J.), the court dismissed Professor Hughes's claims for lack of Article III constitutional standing, dismissed the federal-law claims of Professors Frisella and Day for failure to state a claim on which relief can be granted, declined to exercise supplemental jurisdiction over the pendent state-law claims of Professors Frisella and Day, and granted the Professors leave to replead. Thereafter, the Professors filed a third amended complaint, which Dallas College moves to dismiss. Dallas College moves under Rule 12(b)(1) to dismiss Professor Hughes's claims for lack of Article III constitutional standing and to dismiss the Professors' claims under Rule 12(b)(6) for failure to state a claim on which relief can be granted. The Professors oppose the motion, which the court is deciding on the briefs, without oral argument.

II

The court turns first to Dallas College's jurisdictional challenge to Professor Hughes's claims.[1] Dallas College maintains that Professor Hughes lacks Article III constitutional

---

[1]*See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the

standing because he has not suffered a concrete injury in fact.

A

The court begins by revising its reading of the Fifth Circuit's decision in *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445 (5th Cir. 2022).[2] Out of an abundance of caution, the court in *Frisella I* read *Denning*'s sweeping declaration that a breach of contract is an injury in fact as being limited: in particular, limited by the fact that, in *Denning*, the defendant's alleged breach resulted in a concrete harm to *someone*, although that someone was not a party. *See Frisella I*, 2024 WL 4448675, at *5 (noting that plaintiff's insurer suffered pecuniary harm). Exercising such caution is compelled by the limited reach of federal court jurisdiction. "[Federal courts] possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

Upon further reflection, however, and with the benefit of additional briefing, the court holds that alleging a breach of contract is alone sufficient to plead a concrete injury in fact. *See Denning*, 50 F.4th at 449 (holding that breach of contract pleaded concrete injury in fact even though plaintiff did not allege that defendant's breach caused *her* pecuniary harm);

---

merits.").

[2]*See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010) (explaining that a district court is generally at liberty to reconsider its prior rulings).

*Dinerstein v. Google, LLC*, 73 F.4th 502, 522 (7th Cir. 2023) (citing *Denning* for this proposition); *BarZ Adventures Inc. v. Patrick*, 2023 WL 2478550, at *13 (E.D. Tex. Mar. 13, 2023) (same); *Spencer v. Plumrose USA, Inc.*, 2024 WL 3461047, at *8 (N.D. Miss. July 16, 2024) (same). *See also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (explaining that intangible harms "traditionally recognized as providing a basis for lawsuits in American courts" are "concrete"); *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 292-93 (6th Cir. 2018) (Thapar, J., concurring) (explaining that breach of contract, standing alone, traditionally provided basis for lawsuits in American courts and collecting authority to that effect).

B

The third amended complaint's detailed allegations regarding Dallas College's breach of Professor Hughes's employment contract satisfy his burden at the pleading stage to plausibly allege that he has suffered a concrete injury in fact. *See Denning*, 50 F.4th at 451-52 (holding that a breach of contract, standing alone, pleads a concrete injury in fact). Accordingly, the court denies Dallas College's motion to dismiss Professor Hughes's claims for lack of Article III constitutional standing.

III

The court now considers whether the Professors have stated a claim on which relief can be granted.

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiffs'] [third amended] complaint by 'accept[ing] all well-pleaded facts as true,

-4-

viewing them in the light most favorable to the plaintiff[s].'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

      Section 1983 provides a private right of action to redress a violation of a federal constitutional or statutory right by those acting under color of state law. *See Manuel v. City of Joliet*, 580 U.S. 357, 361 (2017). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). To state a claim

under § 1983, a plaintiff must allege a violation of a federal constitutional or statutory right and demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See, e.g.*, *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). To assert a claim against a local government entity like a community college, a plaintiff must also allege that (1) an official policy or custom was a cause in fact of the deprivation of rights inflicted; (2) a final policymaker approved or sanctioned the official policy or custom; and (3) the official policy or custom is a "moving force" behind the deprivation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978). These three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The court can consider whether the Professors have alleged a violation of a federal constitutional right before reaching the issue of municipal liability. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009) (addressing "threshold issue" of whether defendants violated plaintiff's constitutional rights before addressing issue of municipal liability).

IV

The Professors bring claims under 42 U.S.C. § 1983 for deprivation of their property and the First Amendment liberty of Professors Frisella and Day without due process of law, in violation of the First and Fourteenth Amendments.

A

The court considers first whether the Professors have plausibly pleaded that Dallas College deprived them of property without due process of law, in violation of the Fourteenth Amendment.

"To state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest'" without due process of law. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) (per curiam)). The court will assume *arguendo* that Dallas College's revision of its policies deprived the Professors of a protected property interest.

> [Thus] [t]he dispositive inquiry here is whether [Dallas College's revision of its policies] was a legislative or [adjudicative] action. If it was [adjudicative], [the Professors] might have been owed some level of procedural due process. However, it is well established law that once an action is characterized as legislative, procedural due process requirements do not apply.

*Jackson Ct. Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989).

Two factors inform whether a governmental action is legislative or adjudicative: (1) the scope of persons affected by the action and (2) the nature of the facts on which the action is based. *Compare, e.g.*, *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) (holding that government agency's order increasing valuation of all taxable property in Denver by 40% was legislative because it affected a large

number of people and was not based on individualized facts) *with Londoner v. Denver*, 210 U.S. 373, 385-86 (1908) (holding that government agency's assessment of tax against particular landowners for paving of a particular street was adjudicative because it affected a small number of people and was based on individualized facts); *see also* 16D Francis C. Amendola, et al., *Corpus Juris Secundum Constitutional Law* § 2010 (2024) ("For the purpose of determining applicable due process requirements, a governmental agency exercises a 'legislative function' when (1) it promulgates policies, standards, regulations, or rules of general application and prospective operation, and (2) the decision is appropriately based on considerations similar to those that the legislature itself could have invoked and not on the evidentiary input of particular individuals describing specific situations or instances."). A governmental action is legislative if it is of general applicability and based on generalized, as opposed to individualized, facts. *See Bi-Metallic*, 239 U.S. at 445; *Londoner*, 210 U.S. at 385-86; *see also, e.g.*, *Jackson Ct. Condominiums*, 874 F.2d at 1076; *Hughes v. Tarrant Cnty. Tex.*, 948 F.2d 918, 921 (5th Cir. 1991); *Cnty. Line Joint Venture v. City of Grand Prairie, Tex.*, 839 F.2d 1142, 1145-46 (5th Cir. 1988); *United States v. LULAC*, 793 F.2d 636, 648 (5th Cir. 1986).

Based on the Professors' allegations, the court concludes that the third amended complaint only plausibly pleads that Dallas College's revision of its policies was a legislative action. The revised policies apply to all faculty members, not a discrete subset, such as the Professors or those who allegedly antagonized Dallas College's Board of Trustees ("Board"). And the revision was based generally on the activities of the Dallas College chapter of the

American Association of University Professors ("AAUP") and other Board antagonists, not specifically on the activities of particular faculty members. Thus the third amended complaint only plausibly pleads that Dallas College's revision of its policies was a legislative action to which "procedural due process requirements do not apply." *Jackson Ct. Condominiums*, 874 F.2d at 1074.

B

The Professors maintain, however, that "the legislative nature of Defendant's policy-making does not provide an absolute bar to due process claims." Ps. Resp. (ECF No. 38) at 12. This is so, the Professors contend, because "the Supreme Court strongly implied an exception . . . . [when] there was a[][] defect in the legislative process." *Id.* (citing *Atkins v. Parker*, 472 U.S. 115, 130 (1985)). The Professors also posit that their state-law claim under the Texas Open Meetings Act "br[ings] the 'legislative action' into question." *Id.* at 13 (citing *Laza v. City of Palestine, Tex.*, 2022 WL 946342, at *20 (E.D. Tex. Mar. 29, 2022)).

Although "[s]ome courts have read [*Atkins*] to imply an exception where the legislative process was 'defective' in some way," *Dibble v. Quinn*, 793 F.3d 803, 813 n.5 (7th Cir. 2015) (collecting cases), the Fifth Circuit has not. To the contrary, even post *Atkins* the Fifth Circuit has recognized that procedural due process rights do not attach when the governmental action is legislative or quasi-legislative. *See, e.g.*, *G & H Dev., L.L.C. v. Benton-Par. Metro. Plan. Comm'n*, 641 Fed. Appx. 354, 357, 357 n.6 (5th Cir. 2016) (per curiam); *Gaalla v. Brown*, 460 Fed. Appx. 469, 476 (5th Cir. 2012) (per curiam) (citing *Martin v. Mem'l Hosp. at Gulfport*, 130 F.3d 1143, 1149 (5th Cir.1997)). Considering the

Fifth Circuit's consistent approach together with the limited attention to this question found in the parties' briefing, the court declines to recognize an implied exception for defects in the legislative process. *Cf. In re Nary*, 253 B.R. 752, 762 n.23 (N.D. Tex. 2000) ("Fitzwater, J.) ("[T]his court will not consider an argument that is inadequately briefed[.]"); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) ("[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.").

Accordingly, the Professors' due process claim is dismissed.

V

The court considers next whether Professors Frisella and Day[3] have plausibly pleaded that Dallas College revised its policies in retaliation for their speech activities, in violation of the First and Fourteenth Amendments.

A

The First Amendment has been held to apply to the states through the Fourteenth Amendment's Due Process Clause and protects "[s]peech by citizens on matters of public concern[.]" *Lane v. Franks*, 573 U.S. 228, 235 (2014). "[P]ublic employees do not renounce

---

[3]The court rejects the Professors' suggestion that, "[a]lthough Hughes did not engage in protected speech," he can state a claim for First Amendment retaliation because "the retaliation that occurred as a result of Day's and Frisella's protected speech[] impacts Hughes directly." Ps. Resp. (ECF No. 38) at 17-18. Professor Hughes cannot state a First Amendment retaliation claim based on a violation of the First Amendment rights of Professors Frisella and Day. *See Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (emphasis added) ("[F]or a claim alleging deprivation of a constitutional right, an individual plaintiff must prove that the defendant violated *his* personal rights.").

their citizenship when they accept employment," *id.* at 236, and they cannot be discharged, disciplined, or punished for exercising their right to free speech, *see Page v. DeLaune*, 837 F.2d 233, 237 (5th Cir. 1988). "To prove a claim of First Amendment retaliation, [] plaintiff[s] must establish that (1) [they] suffered an adverse employment decision; (2) [their] speech involved a matter of public concern; (3) [their] interest in commenting on matters of public concern . . . outweighs the [d]efendant's interest in promoting efficiency; and (4) [their] speech motivated the adverse employment decision." *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013) (fifth alteration in original) (internal quotation marks omitted) (quoting *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001)).

B

Dallas College maintains that the speech of Professors Frisella and Day did not involve a matter of public concern.[4]

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick v. Myers*, 461 U.S. 138, 147 (1983). "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (quoting

---

[4]Dallas College also contends that Professors Frisella and Day have not suffered an adverse employment action. The court need not reach this contention because it agrees that Professors Frisella and Day have not pleaded that their speech involved a matter of public concern.

*Connick*, 461 U.S. at 146). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48.

Regarding their speech, Professors Frisella and Day allege the following:

> Dallas College took action to punish their faculty base due to some faculty (including Plaintiff Paul Patrick Day) engaging in vocal and collaborative efforts to establish a faculty senate as an internal academic shared governance body of the college, as well as on account of some faculty (including Plaintiffs Paul Patrick Day and Plaintiff Salvator Frisella) establishing and holding membership in the American Association of University Professors ("AAUP"). The AAUP is an external, private, professional organization. Professor Day was among the nine founders of a Dallas College chapter of the AAUP, and served as its parliamentarian. Professor Frisella was an AAUP member. The creation and membership of this organization were outside the scope and job duties of Plaintiffs Day and Frisella. The local chapter of AAUP sent formal letters to the Dallas College Board of Trustees, critical of policies and actions by the Board and administration under the new "One College" policy. These written communications were taken to the Board—who were persons outside of Plaintiffs' workplace. Further, these communications were not raised up the chain of command. The substance of these written communications concerned misuse of public funds and official misconduct.

3d Am. Compl. (ECF No. 35) ¶ 4.10.

The court cannot reasonably infer from these allegations that Professors Frisella and Day spoke as citizens on a matter of public concern, rather than as employees on a matter of personal interest. Professors Frisella and Day have plausibly alleged that the content of their speech—"misuse of public funds and official misconduct," *id.*—was of interest to the public. *See Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 738 (5th Cir. 2015) ("It is well

established that speech exposing or otherwise addressing malfeasance, corruption or breach of the public trust . . . touches upon matters of public concern."); *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008) (same). But content, alone, is not dispositive. *See Connick*, 461 U.S. at 147-48. The Fifth Circuit, being "chary of an analytical path that takes judges [] uncomfortably close to content based inquiries," looks also at the context and form of the speech to evaluate "the extent to which the [] employee spoke as a citizen or employee." *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993) (per curiam). That is, because "at some level of generality almost all speech of [public] employees is of public concern," in addition to "the 'importance' of the issue" spoken about, courts must consider "the hat worn by the employee when speaking"—that of citizen or employee. *Id.* Here, Professors Frisella and Day have not alleged in sufficient detail facts according to which the court can evaluate the context and form of their speech to determine whether, wearing the hat of employee, they raised malfeasance merely "in furtherance of a personal employer-employee dispute." *Modica v. Taylor*, 465 F.3d 174, 180 (5th Cir. 2006). Notably, the AAUP letters were sent to the Board, which the Professors allege is the final policymaker of their employer, Dallas College.

Accordingly, the court dismisses the First Amendment retaliation claims of Professors Frisella and Day.

VI

The court now considers whether it should exercise supplemental jurisdiction over the Professors' pendent state-law claims given that it is dismissing their federal-law claims.

Although the court can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), in this circuit "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial[.]" *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). The court in its discretion declines to exercise supplemental jurisdiction over the Professors' state-law claims and dismisses them.

VII

Although the court is dismissing the Professors' claims, and although the court has already afforded the Professors two opportunities to replead, it will grant them what is likely their last opportunity to replead.[5] "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). There is no indication that the Professors cannot, or are unwilling to, cure the defects that the court has identified. And allowing them to file a fourth amended complaint is not excessive under the circumstances of this case. In addition to the circumstances discussed in *Frisella II*, 2025

---

[5] The court is not suggesting that it would decline to allow the Professors to replead at a later point in the litigation, should they survive a renewed motion to dismiss. The court is referring to an opportunity to replead if the Professors' fourth amended complaint is deemed insufficient to state a claim on which relief can be granted.

WL 755224, at *9, today's decision revises the court's prior conclusion that the alleged breach of Professor Hughes's contract does not alone plead a concrete Article III injury in fact, and for the first time evaluates the Professors' due process claim under *Bi-Metallic*'s legislative-adjudicative framework.  Accordingly, the court will grant the Professors 28 days from the date this memorandum opinion and order is filed to file a fourth amended complaint. *See, e.g.*, *Ginsburg v. ICC Holdings, LLC*, 2017 WL 5467688, at *23 (N.D. Tex. Nov. 13, 2017) (Fitzwater, J.) (granting plaintiff leave to file a fifth amended complaint where court alerted him to certain deficiencies for the first time).

\* \* \*

For the reasons explained, the court dismisses the Professors' claims and grants them leave to file a fourth amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

May 29, 2025.

SIDNEY A. FITZWATER
SENIOR JUDGE