IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SALVATORE FRISELLA, | § | |
| PAUL PATRICK DAY, and | § | |
| HOWARD JEFFREY HUGHES, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-0469-D |
| | § | |
| DALLAS COLLEGE, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

The court returns to this action in which three Dallas College Professors—plaintiffs Salvatore Frisella ("Professor Frisella"), Paul Patrick Day ("Professor Day"), and Howard Jeffrey Hughes ("Professor Hughes") (collectively, "the Professors," unless the context indicates otherwise)—bring an action under 42 U.S.C. § 1983 complaining that defendant Dallas College unlawfully revoked their tenure. Dallas College moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants the motion in part and denies it in part.

I

The relevant background facts of this case are largely set out in a prior memorandum opinion and order and need not be repeated at length for purposes of deciding Dallas

College's motion to dismiss.[1]  The court previously dismissed the Professors' federal-law claims for failure to state a claim on which relief can be granted, declined to exercise supplemental jurisdiction over their pendent state-law claims, and granted them leave to replead.  *See Frisella v. Dallas Coll. ("Frisella III")*, 2025 WL 1531577, at *1 (N.D. Tex. May 29, 2025) (Fitzwater, J.).  On repleading, the Professors' fourth amended complaint asserts federal-law claims under 42 U.S.C. § 1983 for deprivation of their property and the First Amendment liberty of Professors Frisella and Day without due process of law, in violation of the First and Fourteenth Amendments, and pendent state-law claims for breach of contract and violation of the Texas Open Meetings Act ("TOMA"), Tex. Gov't Code Ann. §§ 551.001-551.146 (West 2025).  Dallas College now moves to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  The Professors oppose the motion, which the court is deciding on the briefs, without oral argument.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiffs'] [fourth amended] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to

---

[1]*See Frisella v. Dall. Coll.*, 2024 WL 4448675, at *1-2 (N.D. Tex. Oct. 8, 2024) (Fitzwater, J.).

dismiss, the plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

The court considers initially whether the Professors have stated a § 1983 claim on which relief can be granted.

Section 1983 provides a private right of action to redress a violation of a federal constitutional or statutory right by those acting under color of state law. *See Manuel v. City of Joliet*, 580 U.S. 357, 361 (2017). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation modified). To state a claim under § 1983, a plaintiff must allege a violation of a federal constitutional or statutory right and demonstrate

that the alleged deprivation was committed by a person acting under color of state law.  *See, e.g.*, *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994).

The parties dispute whether the Professors have pleaded a violation of a federal constitutional right.[2]  The Professors allege that Dallas College's revision of its policies violated their Fourteenth Amendment right not to be deprived of property without procedural and substantive due process of law and the First and Fourteenth Amendment rights of Professors Frisella and Day not to be retaliated against for engaging in protected speech.

IV

The court considers first whether the Professors have plausibly alleged a violation of their Fourteenth Amendment right to due process of law.

A

The Fourteenth Amendment to the United States Constitution prohibits "any State"[3] from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1.  "The guarantee of due process enshrined in the Fourteenth Amendment has [procedural and substantive components]." *Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016).  "[P]rocedural due process guarantees citizens the protection of adequate

---

[2]The court can consider whether the Professors have pleaded a violation of a federal constitutional right before reaching the issue of municipal liability.  *See Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009) (addressing "threshold issue" of whether defendants violated plaintiff's constitutional rights before addressing issue of municipal liability).

[3]Local government entities are state actors for purposes of the Fourteenth Amendment. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368-69 (2001).

procedures[.]"  *Id.*  "Substantive due process 'bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them.""'  *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

"To state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest'" without due process of law.  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) (per curiam)).  The parties dispute whether the Professors have pleaded a plausible claim that they did not receive due process of law.[4]

B

The court begins with the Professors' procedural due process claim.  In *Frisella III* the court concluded that "Dallas College's revision of its policies was a legislative action to which 'procedural due process requirements do not apply.'"  *Frisella III*, 2025 WL 1531577, at *4 (quoting *Jackson Ct. Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989)).  The court also declined to recognize in the first instance an exception to that rule based on the Professors' allegation that the legislative process was defective.  *See*

---

[4]The parties also dispute whether the Professors have plausibly alleged that Dallas College deprived them of a protected property interest.  The court, however, will assume *arguendo* that such a deprivation occurred, because the court concludes that, even if it did, the Professors have failed to plausibly plead that they were denied due process of law, and therefore have failed to state a Fourteenth Amendment due process claim on which relief can be granted.

*id.* (explaining that the Fifth Circuit has never recognized such exception and noting that the Professors' briefing on the question was too sparing for the court to do so in the first instance). On repleading, the Professors have failed to persuade the court to revise these conclusions.

The Professors contend that Dallas College's revision of its policies was not a legislative action because the revised policies "were not simply of 'prospective operation' or of 'general future applicability,'" but "affected [the Professors'] existing rights, during the pendency of existing contracts, and [] were intentionally written to do so." Ps. Resp. (ECF No. 44) at 2.[5] But even if the court assumes *arguendo* that the Professors have plausibly pleaded that this is *factually* so, they have not cited, and the court has not located, any authority to support the premise that these characteristics are *legally* relevant to whether the revision was a legislative action.[6]

_____

[5]Dallas College raises in its reply brief that the Professors' responsive brief was filed one day late. "The court will consider the response, however, because doing so has not interfered with the decisional process of the court." *Lowrie v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 1090678, at *1 n.1 (N.D. Tex. Mar. 21, 2016) (Fitzwater, J.).

[6]The fallacy in this proposition becomes apparent when it is applied. For example, "[i]t has long been recognized that benefits distributed by the government are a form of property protected by the due process clause." *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 735 (5th Cir. 2008) (citing *Goldberg v. Kelly*, 397 U.S. 254, 262, 262 n.8 (1970)). When Congress enacts a generally applicable statute that narrows the class of persons eligible for a federal benefit, it does so in a legislative capacity. *See, e.g.*, *McMurtray v. Holladay*, 11 F.3d 499, 504 (5th Cir. 1993). Congress can deprive persons of a federal benefit without providing individualized procedural due process because "the legislative process provides all the process that is due." *Id.* at 504. Yet the Professors would apparently maintain that this quintessential act of lawmaking constitutes an adjudicative action to which procedural due process rights attach if it affects some preexisting recipients'

The Professors contend in the alternative that, even if the revision was legislative, procedural due process rights still attach because Dallas College's Board violated the TOMA, and the legislative process was therefore defective. The Professors' briefing of the matter, however, is once again insufficient to justify deviating from "the Fifth Circuit's consistent approach[.]" *Frisella III*, 2025 WL 1531577, at *4 ("Although some courts have read *Atkins v. Parker*, 472 U.S. 115 (1985) to imply an exception where the legislative process was defective in some way, the Fifth Circuit has not. To the contrary, even post *Atkins* the Fifth Circuit has recognized that procedural due process rights do not attach when the governmental action is legislative or quasi-legislative." (citation modified)).

Accordingly, the Professors' procedural due process claim is dismissed.

---

access to the federal benefit, or, if Congress was motivated by factual findings that were not strictly of general applicability (which, incidentally, is frequently true of legislative facts, *compare Londoner v. City & Cnty. of Denver*, 210 U.S. 373, 385 (1908) (regarding as adjudicative factfinding regarding levy of property tax where factfinder tasked with "determining whether, in what amount, and upon whom it shall be levied, and of making its assessment and apportionment")).

Suppose, for instance, that Congress enacted legislation that narrowed the class of persons eligible for a federal benefit based on its finding that a small minority of that benefit's recipients had perpetrated fraud. In the Professors' view, that legislative enactment would constitute an adjudicative action, and all preexisting recipients who were rendered ineligible would be entitled to individualized procedural due process. That position is misplaced. *Cf. Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.").

C

The court turns next to the Professors' substantive due process claim.[7]

A substantive due process claim is subject to dismissal at the motion to dismiss stage based on the claimant's failure to "plausibly allege that no set of facts exists that would provide a rational basis for the challenged [governmental action]."[8]  *SJM Irrevocable Fam. Tr. v. City of Runaway Bay*, 2024 WL 3748026, at *4 (N.D. Tex. Aug. 9, 2024) (Pittman, J.) (first citing *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); and then citing *Hines v. Quilivan*, 982 F.3d 266, 276 (5th Cir. 2020)); *see MC Trilogy Tex., LLC v. City of Heath, Tex.*, 2023 WL 8850760, at *3 (N.D. Tex. Dec. 21, 2023) (Fitzwater, J.) (dismissing substantive due process claim for failure to plausibly allege rational basis); *cf. James v. Larcom*, 2023 WL 5165580, at *1 (5th Cir. Aug. 11, 2023) (per curiam) (unpublished) ("To establish an equal protection violation . . . James was required to plausibly allege that . . . 'there was no rational basis for the difference in treatment.'" (quoting *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012))).  Here, Dallas College's revision of its policies is rationally related to the legitimate government interest of improving the quality of instruction by providing greater incentive for faculty to perform effectively.  *See FM*

_____

[7]The Professors allege that Dallas College's revision of its policies denied them substantive due process of law because it was "arbitrary and capricious."  4th Am. Compl. (ECF No. 41) ¶ 4.11.

[8]The Professors "do not dispute the applicability of the rational basis test," but argue that the rational-basis determination is not appropriate at the motion to dismiss stage.  Ps. Resp. (ECF No. 44) at 5.

*Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174-75 (5th Cir. 1996) ("'The question is only whether a rational relationship exists between the [policy] and a *conceivable* legitimate governmental objective.'  If the question is at least debatable, there is no substantive due process violation." (citation omitted)).

Accordingly, the Professors' substantive due process claim is dismissed.

V

The court considers next whether the Professors have plausibly alleged a violation of the First and Fourteenth Amendment right of Professors Frisella and Day not to be retaliated against for engaging in protected speech.

A

The First Amendment has been held to apply to the states through the Fourteenth Amendment's Due Process Clause and protects "[s]peech by citizens on matters of public concern[.]" *Lane v. Franks*, 573 U.S. 228, 235 (2014).  "[P]ublic employees do not renounce their citizenship when they accept employment," *id.* at 236, and they cannot be discharged, disciplined, or punished for exercising their right to free speech, *see Page v. DeLaune*, 837 F.2d 233, 237 (5th Cir. 1988).

> To prove a claim of First Amendment retaliation, [] plaintiff[s] must establish that (1) [they] suffered an adverse employment decision; (2) [their] speech involved a matter of public concern; (3) [their] interest in commenting on matters of public concern . . . outweighs the [d]efendant's interest in promoting efficiency; and (4) [their] speech motivated the adverse employment decision."

*Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013) (fifth alteration in original)

(internal quotation marks omitted) (quoting *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001)). The parties dispute whether the Professors have plausibly pleaded the first and second elements.

B

The court turns first to whether the Professors have plausibly alleged that Professors Frisella and Day suffered an adverse employment action.

"Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Tex. Dep't of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994) (addressing First Amendment retaliation). The Professors allege that Dallas College's revision of its policies to revoke their tenured status constituted a demotion. Dallas College responds that the Professors were not tenured under the prior version of the policies. The court concludes that, even assuming *arguendo* that the Professors were not tenured under the prior version of the policies, they have plausibly alleged that they suffered a demotion, and therefore an adverse employment action.

The change in the terms and conditions of the Professors' employment allegedly induced by Dallas College's revision of its policies is the functional equivalent of a transfer to an objectively worse position. *See, e.g.*, *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999) ("To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement[.]"). Under the prior version of the policies, the Professors were entitled to various procedural

-10-

protections in the event that Dallas College recommended against renewal of their employment contracts, such as notice via a "memorandum [] contain[ing] a full statement of the reasons why renewal of the contract will not be recommended," 4th Am. Compl. (ECF No. 41) Ex. C, and, on timely request, "a hearing on the matter," *id.*, where, *inter alia*, "[t]he burden of proof shall be upon the college president to show facts, by a preponderance of the evidence, that support the [] [] nonrenewal," *id.* Ex. D at 3.  By contrast, under the revised policies, the Professors' only recourse if Dallas College recommends against nonrenewal of their employment contracts is to "present a grievance" to "the director of human resources[.]" *Id.* Ex. B.  The court can draw the reasonable inference from these allegations that the Professors' position of employment under the revised policies, with their reduced protections against nonrenewal, is objectively worse, and, therefore, that the Professors suffered an adverse employment action.

C

The court considers next whether Professors Frisella and Day have plausibly pleaded that they spoke as citizens addressing a matter of public concern.

"When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011).  Dallas College does not appear to dispute that Professors Frisella and Day spoke as citizens, but it argues that "their alleged speech did not involve matters of public concern."  D. Br. (ECF No. 42) at 16.  The court disagrees.

"Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citation modified). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). "In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Snyder*, 562 U.S. at 454.

As the court concluded in *Frisella III*, "Professors Frisella and Day have plausibly alleged that the content of their speech—misuse of public funds and official misconduct—was of interest to the public." *Frisella III*, 2025 WL 1531577, at *5 (citation modified). And, on repleading, the Professors have alleged facts from which the court can draw the reasonable inference that "the form and context of the speech . . . fortify that conclusion[.]" *Lane*, 573 U.S. at 241. Regarding form, the Professors newly allege that a letter to Dallas College's Board is how any ordinary citizen would raise concerns about malfeasance, which weighs in favor of the conclusion that the speech of Professors Frisella and Day addressed a matter of public concern. *See Guarnieri*, 564 U.S. at 398 (explaining that "[t]he forum in which a petition is lodged will be relevant to the determination whether the petition relates to a matter of public concern" and distinguishing internal employee grievances); *see also id.* (applying Speech Clause's public-concern test to Petition Clause

-12-

claim). Regarding context, Professors Frisella and Day newly allege that the speech in which they engaged—letters sent by the American Association of University Professors to Dallas College's Board of Trustees—represented the views of the faculty as a whole and were part of a broader effort to improve Dallas College. These allegations bolster the reasonable inference that the speech of Professors Frisella and Day addressed a matter of public concern. *Compare, e.g.*, *Gibson v. Kilpatrick*, 838 F.3d 476, 486-87 (5th Cir. 2016) ("Speech is not on a matter of public concern if it is made solely in furtherance of a personal employer-employee dispute. There is nothing to indicate that Gibson's speech occurred against a backdrop of widespread debate in the community. Instead, the lawsuit was filed in the context of a continuing feud between the mayor and Gibson." (citation modified)). The court therefore concludes that, considering content, form, and context, Professors Frisella and Day have plausibly alleged that their speech addressed a matter of public concern.

Accordingly, the court declines to dismiss the § 1983 claim of Professors Frisella and Day for First and Fourteenth Amendment retaliation.

## VI

The court now considers the Professors' pendent state-law claims,[9] beginning with

---

[9]To the extent, if any, that the court may decline to exercise supplemental jurisdiction over Professor Hughes's pendent state-law claims because his federal-law claims have been dismissed, the court in its discretion declines to do so. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction"); *but see Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025) (explaining that § 1367 largely

their common-law breach of contract claim.

A

Under Texas law, which undisputably applies to the contracts at issue in this case, "[b]reach of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019); *see also Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (applying Texas law). The parties dispute whether the Professors have plausibly pleaded the second prong.

The Professors allege that Dallas College breached its policies, which they contend were incorporated by reference into their 2021-2024 employment contracts, by failing in 2022 either to renew their contracts or afford them the policies' pre-nonrenewal procedures. The Professors maintain that the policies are ambiguous with regard to whether faculty have a right to annual renewal, which ambiguity should be resolved by reference to extrinsic

---

codified supplemental-jurisdiction rule as announced in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)); *Gibbs*, 383 U.S. at 726 (explaining discretion not to exercise supplemental jurisdiction where federal claims dismissed, now codified at § 1367(c)(3), by reference to *The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts*, 62 Colum. L. Rev. 1018, 1025-26 (1962)); *The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts*, *supra* note 9 (suggesting that § 1367(c)(3) ground concerned with circumstances under which early dismissal of federal-law claims in federal question case casts doubt on propriety of federal jurisdiction over the *action*, which concern is not present here, because federal-law claim of Professors Frisella and Day remains).

-14-

evidence of the conduct of Dallas College's Board.

B

The court disagrees with the Professors' argument. Even assuming *arguendo* that the Professors' 2021-2024 employment contracts validly incorporated by reference Dallas College's policies, these policies are not ambiguous with regard to whether the Professors had a contractual right either to renewal or pre-nonrenewal process in 2022. "A contract[ual provision] is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018). Here, there is no doubt that the Professors had no contractual right either to renewal or pre-nonrenewal process in 2022.

First, there unambiguously is no right to annual renewal. The policies state that, "[a]t any time after the completion of the first year of a three-year contract, if a faculty member has an 'effective' performance rating, he or she *may* be offered a successor three-year contract *at the discretion of* the Board." 4th Am. Compl. (ECF No. 41) Ex. E at 2 (emphasis added). The policies further state that "[n]either renewal of employment contracts nor other employment procedures or practices shall give rise to an expectation of continued employment beyond the term of the contract[.]" *Id.* Ex. E at 1. Contrary to the Professors' contentions, the Dallas College Board's alleged practice of consistently renewing effective faculty members' employment contracts annually is incapable of creating ambiguity regarding these explicitly permissive provisions. *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 765-77 (Tex. 2018) ("[W]hether a court is considering if an ambiguity exists or

-15-

construing the terms of an unambiguous contract, surrounding facts and circumstances can only provide context that elucidates the meaning of the words employed, and nothing else.").

Second, the Professors unambiguously had no right to pre-nonrenewal process in 2022. Under the policies, the trigger for pre-nonrenewal process is "the college president concur[ring] in [a supervisor's] intention not to re-employ the faculty member[.]" 4th Am. Compl. (ECF No. 41) Ex. C. If that occurs, "the supervisor must inform the faculty member by memorandum on or before the first day of March of the final year of the three-year contract." *Id.* And "within ten days after receipt of such memorandum," the "faculty member may . . . submit to the college president a written request for a hearing on the matter[.]" *Id.* The Professors have not plausibly pleaded that, prior to 2022, a supervisor and the college president jointly decided not to re-employ them. And even if they had, they were not entitled to pre-nonrenewal process *in 2022*, because the supervisor would have had until the first day of March 2024 to provide them with notice, after which they would have ten days to request a hearing.

Accordingly, the Professors' common-law breach of contract claim is dismissed.

VII

Finally, the court turns to the Professors' TOMA claim.

A

The TOMA "was enacted in 1967 for the purpose 'of assuring that the public has the opportunity to be informed concerning the transactions of public business.'" *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990) (quoting 1967 Tex. Gen. Laws 597, 598).

> The executive and legislative decisions of [Texas's] governmental officials as well as the underlying reasoning must be discussed openly before the public rather than secretly behind closed doors.  In order to effect this policy, [the TOMA] requires that 'every regular, special, or called meeting or session of [a] governmental body shall be open to the public.'"

*Id.* (quoting Tex. Gov't Code Ann. § 551.002 (West)).  The TOMA "also requires advance notice for each meeting, and provides for civil [] [] enforcement."  *Cox Enters., Inc. v. Bd. of Trs. of Austin Indep. Sch. Dist.*, 706 S.W.2d 956, 958 (Tex. 1986).

B

The Professors allege that "the decisions and votes taken by the Board at the January 2022 meeting, and at subsequent meetings when the [policy revisions] were adopted, were the result of violations of the [TOMA]."  4th Am. Compl. (ECF No. 41) ¶ 4.38.  In particular, the Professors allege that the Board violated the TOMA by, *inter alia*, deciding in secret to charge Dallas College's general counsel with the task of examining the effect of "the rolling three-year contracts" on "shared governance" and "academic freedom[.]"  *Id.* ¶ 4.41.

Dallas College contends that, based on the Professors' sparse allegations, the occurrence of such secret meetings is pure speculation.  Dallas College also maintains that, regardless, the Professors have not established their entitlement to the injunctive relief for which they pray.  Dallas College maintains that equity dictates that the Professors' 2024 injunctive claim for secret meetings that allegedly occurred sometime in 2021 should be dismissed for lack of diligence.  Dallas College also posits that the Professors cannot make the requisite showing of irreparable injury because "[t]he remedy they seek—the ability to

-17-

receive three-year contracts—is available now, just as it was under the prior versions of Dallas College policies[.]"  D. Br. (ECF No. 42) at 24.

The Professors respond that, "[d]espite the inherent challenge of alleging specific behavior when such behavior took place in secret, [they] have described the facts, as they know them, which indicate TOMA violations, including . . . statements made in public which betray behind-the-scenes requests."  Ps. Resp. (ECF No. 44) at 22.  The Professors also contend that Dallas College's diligence argument "is a defense . . , perhaps, but it is not grounds for dismissal at the Rule 12(b)(6) stage."  *Id.*  And they maintain that Dallas College's revision of its policies deprived them of their right under the prior version of the policies either to renewal of their employment contracts or pre-nonrenewal process.

C

1

The court first considers whether the Professors have plausibly alleged that the Board violated the TOMA by secretly tasking Dallas College's general counsel with reviewing the effect of the three-year rolling contracts on governance and academic freedom.

Under the TOMA, a "governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body."  Tex. Gov't Code Ann. § 551.041 (West 2025).  The TOMA defines "meeting" broadly to mean "a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the

-18-

governmental body takes formal action[.]"  *Id.* § 551.001(4)(A); *see also Cox Enters.*, 706 S.W.2d at 958 ("'Meeting' is broadly defined to cover almost any gathering of a quorum of a governmental body.").  Except under circumstances not alleged to be present here, "[a] governmental body may not conduct a private consultation with its attorney[.]"  Tex. Gov't Code Ann. § 551.071 (West 2025).  And "a public body must post notice, pursuant to statute, of an open or closed meeting with its attorney, if matters of official or public business, or agency policies affecting public business, are to be discussed with him."  Tex. Att'y Gen. Op., No. M-1005 (1971); *see Comm'rs Ct. of Titus Cnty. v. Agan*, 940 S.W.2d 77, 82 (Tex. 1997) ("Attorney General's opinions are persuasive[.]").

Regarding the Board's alleged secret meeting with Dallas College's general counsel, the Professors assert the following.

> [I]n August 2021, Robert Wendland, general counsel to Dallas College, addressed a Board work session. . . .  According to Mr. Wendland, the Board asked its lawyers "to specifically look into the rolling three-year contracts and whether or not those should be continued, and you've asked us to look into the role it has in shared governance and what that entails; academic freedom was implied in those discussions as well."  Mr. Wendland suggested that the Board's interest was a result of "some of the information that you've received from some individuals and anonymous groups that were out there."

4th Am. Compl. (ECF No. 41) ¶ 3.16.  "The public had no prior notice before the Board made such decision to ask for counsel on the issues of academic freedom or shared governance."  *Id.* ¶ 4.41.

Taking these allegations as true and drawing all reasonable inferences in the

Professors' favor, the court can reasonably infer that the Board conducted a private consultation with its attorney regarding matters of, or affecting, public business, and therefore violated the TOMA. The court therefore concludes that the Professors have plausibly pleaded a TOMA violation.[10]

2

The court next considers whether the Professors' TOMA claim should be dismissed for lack of diligence.

Dallas College's diligence argument is effectively a laches defense. *See Gulf, C. & S. F. Ry. Co. v. McBride*, 159 Tex. 442, 453 (1958) (defining laches as "delay that works a disadvantage to another" (citation omitted)). Under Texas law,[11] "[l]aches is an affirmative defense[.]" *Id.* Under federal procedure, to obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011)

---

[10]This conclusion stands even if the Supreme Court of Texas were not persuaded by the Texas Attorney General's opinion regarding notice, because it is a separate violation of the TOMA to conduct an attorney consultation in private. *See* Tex. Gov't Code Ann. § 551.071 (West 2025).

[11]Under the *Erie* doctrine, the court applies federal procedural law and state substantive law when adjudicating state-law claims over which the court is exercising supplemental jurisdiction. *See, e.g., Mexico Foods, LLC v. La Michoacana Meat Mkt. TM Holdings, LLC*, 2019 WL 13202348, at *1 (N.D. Tex. Aug. 13, 2019) (Lynn, C.J.) (citing *Songcharoen v. Plastic & Hand Surgery Assocs., P.L.L.C.*, 561 Fed. Appx. 327, 332 (5th Cir. 2014) (per curiam)). Whether a defense is affirmative, even for purposes of *federal* procedure, is a question of state substantive law. *See LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014).

(Fitzwater, C.J.) (citation modified).  Dallas College therefore is not entitled to dismissal under Rule 12(b)(6) based on the affirmative defense of laches unless the Professors have "pleaded [themselves] out of court by admitting to all of the elements of the defense." *Id.* (citation modified).

"Two essential elements of laches are (1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay." *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989).  Here, even assuming *arguendo* that the Professors unreasonably delayed asserting their TOMA claim, there is no clear indication on the face of the pleadings that, as a result, Dallas College made a good faith change to its position to its detriment.[12]

Accordingly, the court declines to dismiss the Professors' TOMA-based claim for injunctive relief based on an alleged lack of diligence in pursuing the claim.

3

The court finally considers whether the Professors' TOMA-based claim for injunctive relief should be dismissed on the ground that they have not shown that, absent such relief, they would suffer irreparable injury.  The court will assume *arguendo* that the failure to plausibly plead the elements of injunctive relief is grounds for dismissal of an injunctive relief claim under Rule 12(b)(6), because, even so, Dallas College's argument fails.

"To obtain permanent-injunctive relief, a party must show (1) the existence of a

---

[12]The court assumes *arguendo* that Texas law permits TOMA defendants to assert a laches defense.

wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law." *Livingston v. Livingston*, 537 S.W.3d 578, 587 (Tex. App. 2017, no pet.). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Dallas College maintains that the Professors' injury is not irreparable because the "remedy they seek—the ability to receive three-year contracts—is available now, just as it was under the prior versions of Dallas College policies, and thus an injunction is not required to prevent irreparable injury." D. Br. (ECF No. 42) at 24. But while this argument perhaps addresses Article III *redressability*, it does not relate to irreparable-injury compensability.

The court therefore declines to dismiss the Professors' TOMA-based injunction claim on this basis.

\* \* \*

For the reasons explained, the court grants in part and denies in part Dallas College's July 10, 2025 motion to dismiss.

**SO ORDERED**.

August 22, 2025.

SIDNEY A. FITZWATER
SENIOR JUDGE

-22-